## PEORIA & PEKIN UNION RAILWAY COMPANY *v.* UNITED STATES, INTERSTATE COMMERCE COMMISSION, AND MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

No. 318.   Argued November 20, 21, 1923.—Decided January 7, 1924.

1. The authority conferred upon the Interstate Commerce Commission by the Transportation Act, 1920, to issue orders without notice or hearing, in certain classes of cases, if it finds that an emergency exists, does not sustain an order, so issued, requiring a terminal carrier to switch, by its own engines and over its own tracks, freight cars tendered by or for another connecting carrier. P. 532.

2. The provision of the Act of October 22, 1913, that suit to set aside an order of the Commission shall be brought in the district of the residence of the party on whose petition the order was made, relates to venue, not to jurisdiction of the subject matter; and objection that the suit is in another district, will be waived if not made in the trial court.   P. 535.

3. In a suit of that kind, wherein the District Court overruled an objection by the United States to the venue, but refused a temporary injunction, and the plaintiff appealed, *held* that the right of the United States to insist upon its objection was lost by its failure to take a cross appeal.   *Id.*

Reversed.

APPEAL from a decree of the District Court refusing a temporary injunction in an action to set aside an order of the Interstate Commerce Commission.

*Mr. Robert V. Fletcher,* with whom *Mr. John M. Elliott* was on the brief, for appellant.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, for the United States.

The emergency order was entered on the petition of Minneapolis & St. Louis Railroad, a resident of Iowa, and the District Court was without jurisdiction.   Urgent De-

ficiencies Act 1913, 38 Stat. 209, 219; Commerce Court Act, 36 Stat. 539, 542; *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Oregon* v. *Hitchcock*, 202 U. S. 60; *United States* v. *Lee*, 106 U. S. 196; *Kansas* v. *United States*, 204 U. S. 331; *Illinois Central R. R. Co.* v. *Public Utilities Comm.*, 245 U. S. 493; *Skinner & Eddy Corp.* v. *United States*, 249 U. S. 557; *Procter & Gamble Co.* v. *United States*, 225 U. S. 282; Interstate Commerce Act, § 5, 34 Stat. 584, 592.

The order was within the power of the Commission. Transportation Act, §§ 400, 402, 41 Stat. 456, 474, 476; *Pennsylvania Co.* v. *United States*, 236 U. S. 351.

*Mr. R. Granville Curry,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

The order was within the authority conferred upon the Commission by the Interstate Commerce Act, and was entered in accordance with the duties imposed upon the Commission by this act. *Wisconsin R. R. Comm.* v. *Chicago, B. & Q. R. R. Co.*, 257 U. S. 563, 585; *New England Divisions Case*, 261 U. S. 184, 189; *Interstate Commerce Comm.* v. *Illinois Central R. R. Co.*, 215 U. S. 452, 470, 477; *New Haven R. R. Co.* v. *Interstate Commerce Comm.*, 200 U. S. 361, 391; *Armour Co.* v. *United States*, 209 U. S. 56, 72. See also *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1, 17; *Director General* v. *Viscose Co.*, 254 U. S. 498, 504; *United States* v. *Louisville & Nashville R. R. Co.*, 235 U. S. 314, 320; *Manufacturers Ry. Co.* v. *United States*, 246 U. S. 457, 481, 488; *Seaboard Air Line Ry. Co.* v. *United States*, 254 U. S. 57, 62; *Baltimore & Ohio R. R. Co.* v. *Lambert Run Coal Co.*, 267 Fed. 776; s. c. 258 U. S. 377; *United States* v. *Louisville & Nashville R. R. Co.*, 195 Fed. 88, 96.

The order is not unconstitutional. *New England Divisions Case*, 261 U. S. 201; *St. Louis S. W. Ry. Co.* v. *United States*, 245 U. S. 136, 143.

*Mr. Donald Evans,* with whom *Mr. M. M. Joyce* was on the brief, for Minneapolis & St. Louis Railroad Company, appellee.

Whether, as an abstract proposition, the order in its terms goes beyond the powers conferred by Congress is immaterial, for the reason that, under the situation as presented by the record, the plaintiff has failed to show that, as a result of the issuance of the order, its property is being taken for public use without compensation, or that it is deprived of its property without due process of law. The claims of constitutional infringement of plaintiff's rights are based entirely upon the assumption that the services required to be performed and the facilities furnished are performed for and furnished to the Minneapolis & St. Louis Railroad Company. This is an erroneous assumption. The facilities are furnished to the tenants of the plaintiff under tenancy contracts. The services are performed for the tenants under the same agreements. By virtue of those contracts, the facilities have become part of the railroads of the tenants, and neither they nor their agent has any right to collect from a connection a charge for receiving or delivering a car in interchange. The plaintiff has no right to be compensated by this defendant, and, this being the only right of which it claims it is deprived by the issuance of the service order, it follows that the order of the District Court must be affirmed.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Transportation Act 1920 confers upon the Interstate Commerce Commission authority to issue, in certain classes of cases, orders "with or without notice, hearing, or the making or filing of a report," if it finds that an emergency exists. Act of February 28, 1920, c. 91, § 402, 41 Stat. 456, 476–477, 486.

Purporting to act under this power, the Commission ordered, without notice or hearing, that the Peoria &

Pekin Union Railway Company " continue to interchange
freight traffic between the Minneapolis & St. Louis Rail-
road Company and connecting carriers at the regularly
established interchange points at and in the vicinity of
Peoria, Ill." This order required the terminal company
to switch, by its own engines and over its own tracks,
freight cars tendered to it by, or for, the Minneapolis &
St. Louis, a service which it had .threatened to discontinue
because the payment demanded therefor had been re-
fused.[1] The Peoria Company insisted that the Commis-
sion was without authority under its emergency power
to require one carrier to switch cars for another; and
brought this suit against the United States in the federal
court for southern Illinois .to enjoin the enforcement of
the order. The Commission and the Minneapolis & St.
Louis intervened as defendants. The case was heard
upon application for a temporary injunction; the injunc-
tion was denied; and the Peoria Company took a direct
appeal to this Court under the Act of October 22, 1913,
c. 32, 38 Stat. 208, 220.

It is conceded that the Commission could, under its
general powers and upon appropriate procedure, order a
terminal company to perform a service of this character.
But under the general powers of the Commission this
could be done only after full hearing, and such an order
would ordinarily not take effect under the law until thirty
days after service.[2] It is also conceded that the existing

---

[1] See *Minneapolis & St. Louis R. R. Co.* v. *Peoria & Pekin Union
Ry. Co.*, 68 I. C. C. 412; *Intermediate Switching Charges at Peoria,
Ill.*, 77 I. C. C. 43.

[2] See *Pennsylvania Co.* v. *United States*, 236 U. S. 351; *Louisville
& Nashville R. R. Co.* v. *United States*, 238 U. S. 1, 20; Act to
Regulate Commerce, § 3, par. 3, 41 Stat. 456, 479; and see § 15 as
amended, 34 Stat. 584, 589; 41 Stat. 456, 485. Compare Hearing on
Car Service Shortage before the Senate Subcommittee of the Com-
mittee on Interstate Commerce, May 3, 1917, S. 636, 65th Cong.,
1st sess., p. 30.

conditions were such as to justify entry of the order under the emergency powers, if these include the requiring of switching. The objection urged is that the emergency power conferred is limited to orders which direct the manner in which transportation service shall be rendered or which prescribe the use to be made of railroad property; and that no such authority is granted to require performance of a transportation service. The substantive question presented is one of statutory construction—the scope of the emergency power.

The Commission possessed no emergency power prior to the so-called Esch Car Service Act, May 29, 1917, c. 23, 40 Stat. 101.[3] Its provisions were amended by Transportation Act 1920; and in the amended form are introduced as paragraphs 15 and 16 of § 1 of the Act to Regulate Commerce and as paragraph 4 of § 15. 41 Stat. 476–7, 486. Paragraph 15 deals in sub-paragraphs (a) and (b) with car service; in sub-paragraph (c) with the common use of terminals; in sub-paragraph (d) with preferences in transportation, embargoes, and movement of traffic under permits. Paragraph 16 and the amendment to § 15 confer emergency power to reroute traffic and to " establish temporarily such through routes as in its [the Commission's] opinion are necessary or desirable in the public interest." None of these provisions grants in terms power to require the performance of a transportation service. The specific grant in paragraph 16 of emergency power to " make such just and reasonable directions with respect to the handling, routing, and movement of the traffic of such carrier and its distribution over other lines of roads," and the omission of any reference to switching, tend to rebut an intention to grant the power here asserted. The order cannot be justified

---

[3] Except that to suspend a tariff increasing rates, as provided in the Act of June 18, 1910, c. 309, § 12, 36 Stat. 539, 552, added to § 15 of the Act to Regulate Commerce as paragraph 7.

as dealing with preferences in transportation or embar-
goes under sub-paragraph (*d*). Nor does the order pro-
vide for the joint use of terminals under sub-paragraph
(*c*)[4]; since it does not purport to authorize the Minne-
apolis & St. Louis to use the tracks and terminals of the
Peoria Company. The contentions mainly urged are that
the order is one concerning car service under sub-para-
graph (*b*)[5]; or that power to require switching should be
held to have been granted by implication.

The argument that the authority of the Commission
over car service should be construed to include the requir-
ing of switching rests upon paragraph 10 of amended § 1
of the Act to Regulate Commerce.[6] But "car service"
connotes the use to which the vehicles of transportation
are put; not the transportation service rendered by means
of them.[7] Cars and locomotives, like tracks and termi-
nals, are the instrumentalities. To make these instru-

---

[4] Sub-paragraph (*c*): "to require such joint or common use of ter-
minals, including main-line track or tracks for a reasonable distance
outside of such terminals, as in its opinion will best meet the emer-
gency and serve the public interest . . ."

[5] Sub-paragraph (*b*): "to make such just and reasonable directions
with respect to car service without regard to the ownership as be-
tween carriers of locomotives, cars, and other vehicles, during such
emergency as in its opinion will best promote the service in the
interest of the public and the commerce of the people, upon such
terms of compensation as between the carriers as they may agree
upon, or, in the event of their disagreement, as the Commission may
after subsequent hearing find to be just and reasonable."

[6] Paragraph 10: "The term 'car service' in this Act shall include
the use, control, supply, movement, distribution, exchange, inter-
change, and return of locomotives, cars, and other vehicles used in
the transportation of property, including special types of equipment,
and the supply of trains, by any carrier by railroad subject to this
Act."

[7] The purpose of the amendment is clearly stated in the report of
the House Committee on Interstate and Foreign Commerce, sub-
mitting H. R. 10,453, enacted as Transportation Act 1920: "Section
402 amends the Car Service Act of May 29, 1917, in several par-
ticulars. Originally the term 'car service' included 'the movement,

mentalities available in emergencies to a carrier other than the owner was the sole purpose of sub-paragraphs *a, b,* and *c.* It is to this end only, that provision is made by paragraph 10 for the "movement, distribution, exchange, interchange, and return of locomotives, cars, and other vehicles used in the transportation of property." This is substantially the same expression as was used in the Esch Car Service Act. The 1920 Act merely adds locomotives and other vehicles.

Transportation Act 1920 evinces, in many provisions, the intention of Congress to place upon the Commission the administrative duty of preventing interruptions in traffic. But there is no general grant of emergency power

distribution, exchange, interchange, and return of cars used in the transportation of property.' As amended the term is made to include the use, control, supply, movement, distribution, etc., not only of cars, but of locomotives and other vehicles. It is further extended to include, ' the supply, movement, and operation of trains by any carrier by railroad subject to this act ', and so require every carrier by railroad ' to furnish safe and adequate car service.'" House Report 456, 66th Cong., 1st sess, p. 17. In discussing the bill before the House, on November 11, 1919, Chairman Esch said: "We also give the Commission greater power in cases of emergency. You know we have had an emergent condition throughout the country many times in recent years. We want the Commission to have the power to act promptly on the spur of the moment in case of emergency in order to prevent congestion at terminals; in order to route traffic around a congested terminal so that it may reach its destination at the earliest possible date; in order to ship goods over the most direct route regardless of instructions contained in the bills of lading. We want all this power to be exercised by the Commission in an emergency. The bill gives such powers to the Commission." 58 Cong. Rec. 8315–8316. See also 58 Cong. Rec. 8529–8531; 59 Cong. Rec. 3263. The reports of the committees of the House and of the Senate on the Esch Car Service Act, and the further explanation of that bill by the chairmen in charge of it, confirm the conclusion that the term " car service " is used in this limited sense. See House Report 1553, 64th Cong., 2nd sess., pp. 2, 6–9; House Report 18, 65th Cong., 1st sess., pp. 5–8; Senate Report 43, 65th Cong., 1st sess., pp. 2–4; 55 Cong. Rec. 2018, 2020–2022, 2024–2025, 2631, 2701.

to that end; and the detail in which the subjects of such power have been specified precludes its extension to other subjects by implication. Moreover, switching service differs in character from those as to which such power is expressly granted. These involve either the use by one carrier of property of another or the direction of the manner and the means by which the service of transportation shall be performed. The switching order here in question compels performance of the primary duty to receive and transport cars of a connecting carrier. That courts may enforce such duties by a mandatory injunction, including a preliminary restraining order, has long been recognized.[8] It may be that Congress refrained, for this reason, from conferring emergency power of this character upon the Commission.

The United States contends, also, that the decree dismissing the bill should be affirmed, because under the Act of October 22, 1913, c. 32, 38 Stat. 208, 219–220, the proper venue was the District of Iowa, that being the residence of the Minneapolis & St. Louis Railroad. Compare *Illinois Central R. R. Co.* v. *State Public Utilities Commission,* 245 U. S. 493, 504, 505; *Skinner & Eddy Corporation* v. *United States,* 249 U. S. 557, 563. The provision that suit shall be brought in the district of the residence of the party on whose petition the order was made is obviously one inserted for his benefit.[9]    If there

---

[8] See *Toledo, Ann Arbor, etc., Ry. Co.* v. *Pennsylvania Co.,* 54 Fed. 730, 746; *Chicago, Burlington & Quincy Ry. Co.* v. *Burlington, Cedar Rapids & Northern Ry. Co.,* 34 Fed. 481. Compare *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Iowa,* 233 U. S. 334; *Covington Stock-Yards Co.* v. *Keith,* 139 U. S. 128; *Union Pacific R. R. Co.* v. *Hall,* 91 U. S. 343.

[9] Prior to the Act of June 18, 1910, c. 309, 36 Stat. 539, creating the Commerce Court (which was abolished by Act of October 22, 1913, c. 32, 38 Stat. 208, 219), the venue of suits brought to enjoin or annul an order of the Commission was the district where the carrier had his principal operating office. Act of June 29, 1906, c. 3591, § 5, 34 Stat. 584, 592.

were a lack of jurisdiction in the district court over the subject matter, we should be obliged to take notice of the defect, even if not urged below by the appellee. *Mattingly* v. *Northwestern Virginia R. R. Co.,* 158 U. S. 53, 57. But the challenge is merely of the jurisdiction of the court for the particular district. The objection is to the venue. See *Camp* v. *Gress,* 250 U. S. 308, 311. This privilege not to be sued elsewhere can be waived; and it was waived both by the Minneapolis & St. Louis Railroad and the Commission. The United States was, nevertheless, entitled to insist upon compliance with the venue provision; and its objection was properly taken below. But by failure to enter a cross appeal from the court's action in overruling its objection, the right to insist upon it here was lost. The appellees can be heard before this Court only in support of the decree which was rendered. *The Maria Martin,* 12 Wall. 31, 40; *Bolles* v. *Outing Co.,* 175 U. S. 262, 268. We have, therefore, no occasion to consider whether the suit was brought in the proper district.

*Reversed.*