## UNITED STATES FIDELITY & GUARANTY CO. v. SWEENEY et al.

### No. 10280.

Circuit Court of Appeals, Eighth Circuit.
Nov. 18, 1935.

Rehearing Denied Dec. 10, 1935.

James A. Potter, of Jefferson City, Mo. (W. T. Ragland, of Jefferson City, Mo., and James E. Garstang and Carter & Jones, all of St. Louis, Mo., on the brief), for appellant.

Hampton Tisdale and La Roy O. Schaumburg, both of Booneville, Mo., for appellee Sweeney.

Before GARDNER, WOODROUGH, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity brought by the trustee in bankruptcy of Lahar Construction Company, a corporation, to set aside as fraudulent, preferential, and without consideration, an alleged transfer of $5,860.98 of the bankrupt's funds to appellant. The decree adjudged that the trustee in bankruptcy "be and he is hereby vested with full and complete right of possession in and to" the account in which the funds were deposited. The bank, the Central Missouri Trust Company, was ordered and directed to set over and deliver possession of the account to the plaintiff. From the decree so entered, appellant prosecutes this appeal.

It appears from the court's findings of fact, or is established by undisputed evidence, that in 1932 the Lahar Construction Company was engaged in building roads under contracts with the state highway department of the state of Missouri; that on or prior to July 14, 1932, it gave bonds for the faithful performance of its duties under these contracts, including the payment for labor and materials. Appellant, United States Fidelity & Guaranty Company, was sole surety on these bonds. These contracts provided that the highway commission might retain a certain per cent. of the contract price until final acceptance of the entire work. They also provided that the state authorities might withhold and decline to release such funds until the contractor had satisfied the state highway commission that payments had been made to all subcontractors and materialmen, and such other charges as might be recoverable under the bond of the contractor, and that in the event of the contractor's default on his contract, the state highway commission might take over the contract and apply the retained percentages and unpaid estimates on the expense of completing the work. Prior to the execution of the bonds by appellant, the president of the Lahar Construction Company, at the request of appel-

lant, signed separate applications and contracts called "Subrogation Agreements" and "Indemnity Contracts." Neither the board of directors of the construction company, nor any of its by-laws conferred specific authority upon the president to execute such contracts. By these instruments, the construction company agreed to assign to appellant "all the deferred payments and retained percentages and any and all moneys and properties that may be due and payable" to the principal at the time of default or thereafter for construction of highways. These contracts also provided that appellant should be subrogated to all rights of the principal in the construction contracts as of the date of the subrogation agreement and indemnity contract.

On or about November 1, 1932, it became apparent to appellant as surety on these bonds, that the construction company must inevitably default on its payments for some of the labor and materials used under certain of these contracts. It was then agreed that all retained percentages and deferred payments on the contracts should be deposited to the joint account of the construction company and the appellant in the Central Missouri Trust Company. The state highway commission was notified of this arrangement and made payments accordingly to the amount of $19,613.12. As a check upon payments, it was agreed that all accrued bills on the construction contracts should be paid by check of the construction company drawn against this deposit and countersigned by the surety company, and in accordance with this arrangement bills were paid until December 10, 1932, at which time an involuntary petition in bankruptcy was filed against the construction company, and it was adjudged a bankrupt.

Prior to bankruptcy, the construction company completed all of the road construction contracts. The money involved in this suit is the balance on deposit at the time of the filing of the petition in bankruptcy. A sum in excess of the amount of the balance on deposit was expended and paid by appellant in payment of charges for labor and materials used in the performance of these construction contracts. All these payments were made by appellant after the filing of the involuntary petition in bankruptcy. The construction company became insolvent on or about August 12, 1932, and continued thereafter to be insolvent. At the time arrangements were made to deposit the funds in the bank, appellant had reasonable cause to believe the construction company was insolvent.

The court concluded as a matter of law that the funds had been paid to the bankrupt with the approval and acquiescence of appellant, and that appellant thereby had waived such rights as it might have had to the money under the contracts with the bankrupt; that appellant, as of the date of bankruptcy, had actually paid no obligation of the construction company, and that the $5,860.98 on deposit should be paid over to the trustee, to be administered by him as such trustee under the bankruptcy laws; that the indemnity and subrogation agreements, in so far as the funds in question were concerned, constituted an attempt to transfer future earnings, and for that reason were ineffectual and void under the provisions of section 2969, R.S.Mo. 1929 (Mo.St.Ann. § 2969, p. 1858); that the purported indemnity contracts and subrogation agreements were in the nature of security, and not being filed or recorded as required of mortgages of personal property, were ineffectual and of no force and effect as against the trustee's rights in the fund; that the rights of other creditors intervened between the execution of the indemnity and subrogation agreements; that even if the fund were in the possession of the appellant, the appellant's possession would constitute a voidable preference under the bankruptcy acts; that no right, by way of lien, existed in favor of laborers or materialmen for work performed on or material furnished in road construction projects under the laws of Missouri.

The decree, among other things, adjudged that the trustee "be and he hereby is vested with full and complete right of possession in and to the joint account in the sum of $5,860.98, remaining on hand to the credit of Lahar Construction Company, a corporation, bankrupt aforesaid, and United States Fidelity and Guaranty Company, a corporation, on the date of the bankruptcy of said Lahar Construction Company, a corporation aforesaid, and said defendant Central Missouri Trust Company be and it hereby is ordered and directed to transfer, set over and deliver the possession of said joint account and said sum of $5,860.98 to said plaintiff, P. D. Sweeney, as Trustee in Bankruptcy of the Lahar Construction Company, corporation aforesaid, or pay the same into court for the purpose aforesaid."

■ It is insisted by appellee that the appeal should be dismissed because the decree was entered against appellant here and the Central Missouri Trust Company, a defendant below, which did not join in the appeal, and no severance was obtained, or anything equivalent thereto. As said by us in McLean v. Jaffray (C.C.A.8) 71 F.(2d) 743, 744: "It is elementary that all persons who appear to have an interest in the judgment or order appealed from must either be made parties to the appeal or proceedings in summons and severance must be had." However, nonjoinder is not fatal if the party not joined has only a nominal interest. Axelrod v. Osage Oil & Refin. Co. (C.C.A.8) 29 F.(2d) 712; Higbee v. Chadwick (C.C.A.6) 220 F. 873.

The Central Missouri Trust Company answered, admitting the deposit of the funds and alleging that the trustee and the appellant each claimed the funds; that it was unable to determine which was lawfully entitled thereto, and that it tendered the money into court for the party which might be adjudged entitled thereto. It prayed the court to make an order permitting it to pay the money into court, and compelling the trustee and appellant to establish their respective claims thereto, and that upon payment of the money into court it be discharged and permitted to go hence with its costs.

In the court's findings, it is recited that, "The Trust Company does not claim ownership of the fund, but has tendered same into court so that the controversy between plaintiff and the other defendant, United States Fidelity and Guaranty Company, might be determined and the amount of the deposit paid to the proper party." We think the trust company had no substantial interest in the controversy. It was a mere stakeholder, and as such was only a nominal party. Farmers' Bank v. Hayes (C.C. A.6) 58 F.(2d) 34. The motion to dismiss the appeal must, therefore, be denied.

On the merits, appellant contends that (1) it had an equitable lien on the fund, acquired more than four months prior to the bankruptcy; (2) the equitable lien created by assignment was not within the purview of section 3097, R.S.Mo.1929 (Mo.St. Ann. § 3097, p. 1919); (3) the deferred payments and retained percentages were not "earnings" within the meaning of section 2969, R.S.Mo.1929 (Mo.St.Ann. § 2969, p. 1858); (4) the agreement under which the fund was paid over and deposited was an appropriation of the money to the payment of claims of laborers and materialmen, who had equitable liens on the fund superior to the lien of appellant; (5) the payment of debts of the bankrupt for labor and materials by appellant after bankruptcy subrogated appellant to rights of laborers and materialmen as of a date more than four months prior to the adjudication in bankruptcy.

Appellee, admitting "that appellant acquired every right, lien or privilege that belonged to any creditor of bankrupt, whose claim has been paid by appellant," contends that such creditors had no lien, and hence, appellant can have none, particularly since the money was paid to the contractor by the state highway commission with the acquiescence and approval of appellant.

■ Section 2890, R.S.Mo.1929 (Mo.St.Ann. § 2890, p. 744) requires that a contractor for public work give a bond, conditioned among other things, "for the payment of material, lubricants, oil and gasoline used in or consumed in the construction of such work and for all labor performed in such work, whether by subcontractor or otherwise." No other Missouri statute appears to provide any protection for laborers or materialmen on a public project. Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors. Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. (C.C.A.6) 271 F. 144. The statutory requirement of a bond to protect them is not inconsistent with such equitable rights. American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A.5) 75 F.(2d) 377. There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of the work by the contractor. Riverview State Bank v. Wentz (C.C.A.8) 34 F.(2d) 419; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Farmers' Bank v. Hayes (C.C.A.6) 58 F.(2d) 34; American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A.5) 75 F.(2d) 377.

■ Appellant was bound by contract to pay the claims for labor and material, and upon paying these claims it was entitled to be subrogated to the superior equities of the laborers and materialmen, and when payment was made its rights related back to

the time of making the contracts. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 145, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; London & Lancashire Indemnity Co. v. Endres (C.C.A.8) 290 F. 98; In re Scofield Co. (C.C.A.2) 215 F. 45; Farmers' Bank v. Hayes (C.C.A.6) 58 F.(2d) 34.

In Prairie State Bank v. United States, supra, it is said: "That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work, as for him for whom the work is to be performed, that it raises an equity in the surety in the fund to be created."

■ Had the state retained these funds, appellant's right to them after it had paid all claims, would, under the foregoing authorities, be clear. Is this right affected by the fact that the money was deposited in the bank? As long as the percentages held back to secure performance of the contract can be identified and followed, they can and should be subjected in equity to the lien of the security. The bank, it will be remembered, asserts no claim to or lien upon these funds. The stipulation of the parties was that upon being informed of the default of the construction company in its payments for labor and material on the project, appellant and the construction company entered into an agreement whereby the state highway commission "was requested to make future payments of moneys earned, current estimates, retained percentages, final and supplementary estimates due the Lahar Construction Company, jointly to the Lahar Construction Company and the United States Fidelity and Guaranty Company; that such payments were made and were deposited in the Central Missouri Trust Company to the joint account of the Lahar Construction Company and the United States Fidelity and Guaranty Company and part thereof was checked out on checks signed by the Lahar Construction Company and countersigned by the United States Fidelity and Guaranty Company."

Mr. Lahar, as a witness, testified that appellant wanted some protection and wanted to know what was going on; that appellant wanted to be certain that this money was applied to labor claims and material claims which it had bonded. The funds were accordingly separately deposited in the bank and used only for payment of the claims of laborers and materialmen, for which the construction company had become liable. It was paid into the bank for that specific purpose. We are of the view that the evidence shows an appropriation of the fund to the payment of these claims.

A somewhat similar situation was presented in Stickney v. General Electric Co. (C.C.A.4) 44 F.(2d) 362. In that case, as here, all parties agreed upon the segregation of money becoming due a contractor for the protection of one who was selling him property to go into the project. The contractor went into bankruptcy, but the court held that the trustee was not entitled to a deposit made for the benefit of the seller of property which went into the project.

■■ Equitable liens, if created before the four months period preceding bankruptcy, are valid and enforceable against the trustee, and they are not preferential even though the funds upon which they are a charge are collected after an adjudication in bankruptcy. Voltz v. Treadway & Marlatt (C.C.A.6) 59 F.(2d) 643. If an equitable lien is created, it is immaterial that "the formal ascertainment of the specific beneficiary was made within four months of the bankruptcy proceedings." Johnson v. Root Mfg. Co., 241 U.S. 160, 36 S.Ct. 520, 521, 60 L.Ed. 934.

■ We conclude that appellant had a valid equitable lien upon these funds which should be recognized and protected; that its rights had their inception at the time it became surety for the construction company. The validity of the contracts of assignment and the question of waiver are immaterial because appellant's rights of subrogation are not dependent upon the contract of assignment. London & Lancashire Indemnity Co. v. Endres (C.C.A.8) 290 F. 98.

■ Appellee insists that the equitable rights of the laborer and materialman must be based on a statute, and as no Missouri statute has recognized the laborer or materialman on a public improvement as entitled to a lien or other preferential treatment, such right does not exist. We have held, however, that in the absence of a controlling state statute, the question is one of general law. Riverview State Bank v. Wentz (C.C.A.8) 34 F.(2d) 419.

240

It is urged by appellee that the bankruptcy court had exclusive jurisdiction to administer upon the fund involved in this litigation and to determine appellant's lien, if any, and distribute the same under the acts of Congress, and that this jurisdiction could not be surrendered. The contention is unique because the appellee invoked the jurisdiction of the lower court and secured the decree which we are considering. Ordinarily, an appellee who files no cross-appeal is bound by the judgment as entered. Blackhurst v. Johnson (C.C.A.8) 72 F.(2d) 644; Merchants' & Manufacturers' Securities Co. v. Johnson (C.C.A.8) 69 F.(2d) 940; Peoria & P. U. Ry. Co. v. United States, 263 U.S. 528, 44 S.Ct. 194, 68 L.Ed. 427. But quite aside from this principle, we think the contention cannot be sustained. A bankruptcy court may determine, in a summary proceeding, adverse claims to property in the possession of the bankrupt at the time of the filing of the petition in bankruptcy. As we understand the record, an attempt was made to have the referee in bankruptcy assume jurisdiction to determine in a summary proceeding all rights of claimants to this fund. This application, however, was denied. The bankruptcy court's jurisdiction to proceed summarily was dependent upon the existence or non-existence of certain facts, and it was its province to determine in the first instance whether it had jurisdiction. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S. Ct. 396, 68 L.Ed. 770; Gamble v. Daniel (C.C.A.8) 39 F.(2d) 447; Central Republic Bank & Trust Co. v. Caldwell (C.C.A.8) 58 F.(2d) 721, 730. In the last-cited case, in an opinion by Judge Booth, speaking to this point, it is among other things said: "If the preliminary examination as to the existence of jurisdiction develops that such possession is present, the bankruptcy court can determine the merits in the summary proceeding before it; if such examination develops that such possession is not present, the bankruptcy court can proceed no farther, but must leave the merits to be determined in a plenary action brought in a court designated in sections 23, 60b, 67e, or 70e, of the Bankruptcy Act [11 USCA §§ 46, 96(b), 107(e) or 110(e)], as may be applicable."

We must, therefore, assume that the bankruptcy court determined that the bankrupt did not have actual or constructive possession of these funds. It is observed that appellee brought this suit to set aside as fraudulent and preferential a transfer of these funds. The United States District Court had jurisdiction of such a suit brought by the trustee. Lowenstein v. Reikes (C.C.A.2) 54 F.(2d) 481; Flanders v. Coleman, 250 U.S. 223, 39 S.Ct. 472, 63 L.Ed. 948; Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507; Collett v. Adams, 249 U.S. 545, 39 S.Ct. 372, 63 L. Ed. 764.

The referee, in dismissing the summary proceeding, further ordered: "That the trustee institute suit against the United States Fidelity and Guaranty Company, a corporation, and Central Missouri Trust Company, a corporation, in the District Court of the United States for the Central Division of the Western District of Missouri." This suit was therefore commenced by the trustee in that court, which, incidentally, was the court in which the bankruptcy proceedings were pending. We are of the view that the referee properly ordered a plenary suit. The trouble with appellee's contention in this respect is that it goes to the issue to be decided on the merits. If an appropriation of the money was in fact made to protect laborers and materialmen or appellant as subrogee, then a trust was created. The bankrupt or the trustee would have no interest in the trust fund except as to surplus, and it appears that there was no surplus. Certainly, the bankrupt had no property interest in this fund prior to the filing of the petition, which it could have transferred or which could have been levied upon and sold under judicial process against it. Philadelphia Nat'l Bank v. McKinlay, 63 App.D.C. 296, 72 F.(2d) 89.

As the decree must be reversed, and the record shows that the United States has claimed priority over the claims of other creditors for taxes due and owing it, that question should possibly be given some consideration, although the question was not determined by the lower court and there is no appeal here on the part of the government.

The government must look to the Bankruptcy Act as amended in 1926, 44 Stat. 666 (section 104, title 11 U.S.C., 11 U.S.C.A. § 104) and not to section 191, title 31 U.S.C., 31 U.S.C.A. § 191 (Rev.St. § 3466). Guarantee Title & T. Co. v. Title Guaranty & S. Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706. Taxes due the government are, of course, entitled to priority of payment in the administration of the estate of a bankrupt, but the priority which the Bankruptcy

Act creates is in the assets of the bankrupt's estate, and it does not give priority over valid liens. Richmond v. Bird, 249 U. S. 174, 39 S.Ct. 186, 63 L.Ed. 543; City of Tampa v. Commercial Bldg. Co. (C.C.A.5) 54 F.(2d) 1057. The statute provides that certain claims shall have priority in advance of payment of dividends to creditors. Manifestly, "dividends," as used in this statute, refers to partial payments to general creditors. Richmond v. Bird, supra.

The judgment appealed from is therefore reversed, and the cause remanded to the lower court for further proceedings consistent herewith.