**CHICAGO, M., ST. P. & P. R. CO. v. McCREE & CO.**

Civ. A. No. 3093.

United States District Court
D. Minnesota, Fourth Division.

March 18, 1950.

58

A. C. Erdall, C. O. Newcomb and S. W. Rider, Jr., all of Minneapolis, Minn., for the plaintiff.

Orr, Stark & Kidder, of St. Paul, Minn., for the defendant.

JOYCE, District Judge.

This is an action brought by the plaintiff railroad to recover demurrage charges incurred by defendant during the period from July 1, 1948 to November 6, 1948. The matter has been submitted upon a stipulation of facts.

During the period above mentioned plaintiff transported cement, sand and gravel which was consigned to defendant at Baroda, Minnesota. The cement was shipped in interstate commerce; the sand and gravel in intrastate commerce. The cars used in the intrastate shipments were, and are, used by plaintiff indiscriminately in interstate and intrastate commerce. Detention of the cars used in these shipments gave rise to the claim for demurrage now before the court. The parties agree as to the number of days for which demurrage may properly be charged by the carrier. The only dispute arises over the rate to be used in computing the demurrage due on those cars used in intrastate shipments.

On April 26, 1948, the Interstate Commerce Commission issued its Revised Service Order No. 775, effective May 1, 1948, and thereafter amended the same on May 13, 1948. The Commission found that a car shortage existed which constituted an emergency requiring immediate action, fixed the time during which its order should remain effective, set demurrage rates on certain types of railroad equipment, and made its order applicable "to intrastate and interstate traffic as well as foreign traffic" subject to certain exceptions not here pertinent. The Commission cited 49 U.S.C.A.

§ 1(10—17) as authority for the exercise of power.

In 1938 the Railroad and Warehouse Commission for the State of Minnesota fixed demurrage rates for railroad cars used in intrastate commerce which rates remained in force and effect in 1948 unless suspended by reason of Revised Service Order No. 775.

In its claim for demurrage from defendant, plaintiff used the rates established by Revised Service Order No. 775 in computing the amount due on all cars involved regardless of whether particular cars had been used in interstate or intrastate commerce. Defendant concedes that the amount due on cars used in interstate commerce has been correctly computed and has paid the same, but claims that in determining the amount due on cars used in intrastate commerce plaintiff should have used the rates fixed by the state regulatory body rather than the higher rates of the Commission's Revised Service Order. It is defendant's contention that the Commission lacked emergency power to fix demurrage charges on railroad cars used in intrastate commerce without first complying with the provisions of Section 13(3) of the Interstate Commerce Act, 49 U.S.C.A. § 13(3). While conceding that Congress could have empowered the Commission to make the order here involved, it is defendant's position that Congress did not do so in paragraphs (10 to 17) of Section 1 of the Act.

As before noted, the Commission acted under powers which it found conferred in paragraphs (10 to 17) of Section 1 of the Act. So far as here pertinent these paragraphs read as follows:

"(Par.) (10) 'Car service' defined. The term 'car service' in this chapter shall include the use, control, supply, movement, distribution, exchange, interchange, and return of locomotives, cars, and other vehicles used in the transportation of property, including special types of equipment, and the supply of trains, by any carrier by railroad subject to this chapter."

"(Par.) (15) Powers of commission in case of emergency. Whenever the commission is of opinion that shortage of equipment, congestion of traffic, or other emergency requiring immediate action exists in any section of the country, the commission shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, at once, if it so orders, without answer or other formal pleading by the interested carrier or carriers, and with or without [formal] notice, hearing, or the making or filing of a report, according as the commission may determine: (a) to suspend the operation of any or all rules, regulations, or practices then established with respect to car service for such time as may be determined by the commission; (b) to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers of locomotives, cars, and other vehicles, during such emergency as in its opinion will best promote the service in the interest of the public and the commerce of the people, upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the commission may after subsequent hearing find to be just and reasonable * * *".

"(17) (a) The directions of the commission as to car service and to the matters referred to in paragraphs (15) and (16) may be made through and by such agents or agencies as the commission shall designate and appoint for that purpose. * * * Provided, however, That nothing in this chapter shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except insofar as such requirement is inconsistent with any lawful order of the commission made under the provisions of this chapter. * * *"

Section 13(3) of the Act which defendant contends had to be complied with before the Commission could lawfully issue the order here involved, provides: "Whenever in any investigation under the provisions of this chapter, or in any investigation instituted upon petition of the carrier concerned, which petition is hereby authorized to be filed, there shall be brought in issue any rate, fare, charge, classification, regulation,

or practice, made or imposed by authority of any State, the commission, before proceeding to hear and dispose of such issue, shall cause the State or States interested to be notified of the proceeding. The commission may confer with the authorities of any State having regulatory jurisdiction over the class of persons and corporations subject to this chapter or chapter 12 of this title with respect to the relationship between rate structures and practices of carriers subject to the jurisdiction of such State bodies and of the commission; and to that end is authorized and empowered, under rules to be prescribed by it, and which may be modified from time to time, to hold joint hearings with any such State regulating bodies on any matters wherein the commission is empowered to act and where the rate-making authority of a State is or may be affected by the action taken by the commission. The commission is also authorized to avail itself of the cooperation, services, records, and facilities of such State authorities in the enforcement of any provision of this chapter or chapter 12 of this title."

The Commission did not proceed in accordance with the provisions of the last quoted section. If such a course was necessary, Revised Service Order No. 775 must be held void insofar as it was made applicable to intrastate traffic. The only question before the court is, therefore, whether paragraphs (10 to 17) of Section 1 of the Act give the Commission emergency power with respect to car service over cars used in intrastate traffic by a carrier subject to the Act.

▪ At the outset it should be noted that although it is common practice to speak of demurrage "rates", to fix demurrage charges for the detention of equipment is not to fix a "rate" as that term is used in the Interstate Commerce Act. Demurrage charges "are an integral part of the established rules and regulations relating to the use and movement of cars." Therefore, "as an integral part of the rules and regulations in respect to car service, they fall within the provisions of Section 1(15) of the Interstate Commerce Act." Iverson v. U. S., D.C.D.C.1946, 63 F.Supp. 1001, 1005, af-

firmed in 327 U.S. 767, 66 S.Ct. 825, 90 L. Ed. 998. And see, Pennsylvania R. R. Co. v. Kittanning Co., 253 U.S. 319, 323, 40 S. Ct. 532, 64 L.Ed. 928; Palmer v. U. S., D.C.D.C.1947, 75 F.Supp. 63, 73.

▪ It should also be noted that the portions of the Act relied upon by the Commission do not relate to the general powers of the Commission with respect to the transportation of property and persons. Nor is this portion of the Act concerned with the powers of the Commission over intrastate or interstate freight "rates". Thus, sections of the Interstate Commerce Act and cases cited by defendant which set forth the limitations on the powers of the Commission over intrastate rates or intrastate transportation service are not in point. Paragraphs (10 to 17) of Section 1 deal only with the Commission's powers over "car service" which, according to paragraph (10), means power over the "use, control, supply, movement, distribution, exchange, interchange, and return of" the mobile equipment used by carriers by railroad subject to the Act. This distinction has heretofore been noted. "But 'car service' connotes the use to which the vehicles of transportation are put; not the transportation service rendered by means of them." Peoria & P. U. Ry. Co. v. United States, 263 U.S. 528, 533, 44 S.Ct. 194, 196, 68 L.Ed. 427. Limitations in the Act on the powers of the Commission over intrastate transportation service and intrastate freight and passenger rates cannot be read as limiting the powers of the Commission over "car service" of carriers subject to the Act.

One would expect to find any limitation on the Commission's powers over "car service" in those sections of the Act devoted to that subject. There is, in fact, such a limitation to be found in the proviso appended to paragraph (17) (a) of Section 1. However, instead of showing that the Commission exceeded its authority in issuing Revised Service Order No. 775, the proviso confirms the power thus exercised.

▪ Reading paragraphs (10) and (15) of Section 1, it is apparent that all mobile equipment of plaintiff is within the emergency power of the Commission regardless

of whether particular cars may be used at particular times to carry shipments intrastate. There is nothing in the language of these paragraphs which would tend to exempt the equipment of an interstate carrier when such equipment was used in intrastate traffic. Furthermore, the argument that Congress did not make paragraph (15) expressly applicable to equipment used in intrastate traffic is not persuasive when reference is made to the proviso in paragraph (17). The latter reserves to the states a very limited power over equipment of an interstate carrier. The proviso shows conclusively that Congress, in providing for the "car service" of carriers subject to the Act, was also mindful of the necessity or desirability of providing some measure of State control over the equipment of interstate carriers. However, it cannot be seriously contended that the issuance of Revised Service Order No. 775 was an intrenchment on the power reserved to the State in the proviso to paragraph (17) of Section 1. Nothing in the fixing of demurrage charges can be construed as affecting the right of a State to require just and reasonable freight and passenger service for intrastate business. The latter measures the power reserved to the States and even that reservation is qualified.

■ Defendant points to the provisions of Section 13(3) of the Act as providing the only means by which the Commission can exercise any authority with respect to intrastate traffic. Section 13(3) provides the procedure to be followed by the Commission whenever any investigation by that body brings in issue "any rate, fare, charge, classification, regulation, or practice, made or imposed by authority of any State" and "where the rate-making authority of a State is or may be affected by the actions taken by the commission." As heretofore noted, the fixing of demurrage charges is an exercise of authority over "car service", and is not an exercise of a regulatory body's rate-making authority. The fact that the Commission fixed demurrage charges on cars of an interstate carrier, even though in some instances such cars were used in intrastate traffic, would not affect the rate-making authority of the Minnesota Railroad and Warehouse Commission. For this reason it must be held that Section 13(3) of the Act is not applicable to action taken by the Interstate Commerce Commission with reference to "car service", and that the procedure outlined in Section 13(3) need not be followed when the Commission acts under the authority conferred in paragraph (15) of Section 1.

■ That Congress has the power to legislate with respect to all equipment of an interstate carrier is conceded by defendant. I believe this power has been exercised in paragraph (15) of Section 1 of the Act. It follows that the issuance of the Commission's Revised Service Order No. 775 was a proper exercise of authority, and that the rate fixed by said Order should be used in computing the demurrage due on all cars of plaintiff, whether such cars were used in interstate or intrastate commerce.

Judgment will, therefore, be entered for plaintiff in the amount of $7,508.39 with interest thereon from December 1, 1948.

Findings of fact, conclusions of law and order for judgment will be submitted by plaintiff.