**Martin M. WICK, Appellant,**

v.

**Joseph KESHNER, Appellee.**

No. 15686.

United States Court of Appeals
Eighth Circuit.

May 7, 1957.

Rehearing Denied May 31, 1957.

Emerson Baetz, Alton, Ill., for appellant.

Wilder Lucas, St. Louis, Mo., and George A. Spencer, Columbia, Mo. (Ralph T. Finley, St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, JOHNSEN, Circuit Judge, and DONOVAN, District Judge.

GARDNER, Chief Judge.

This action was initiated by the filing of a complaint containing two counts. Appellant was plaintiff below and we shall refer to the parties as they were

designated in the trial court. While the complaint contained two counts there was but one transaction involved and the counts of the complaint represent two versions of that transaction.

By the first count plaintiff sought to recover damages in the amount of $30,000 based upon a breach of a duty arising from a fiduciary relationship alleged to exist between the plaintiff and defendant. It was alleged that the defendant represented that he was engaged in the business of breeding, raising, buying and selling of beef cattle and other livestock and was a man of wide experience in his vocation and held himself out as an expert in the valuation, breeding, raising, buying and selling of beef cattle and other livestock; that plaintiff, on the other hand, was a pipe organ manufacturer without experience or knowledge in the business of breeding, raising, buying or selling of beef cattle or other livestock; that at the time mentioned in the complaint plaintiff and defendant discussed the possible investment of $15,000 by plaintiff in the business of beef cattle raising operated by defendant; that by way of inducement to such investment by plaintiff, defendant represented that if plaintiff would make such an investment he might realize a 25% per annum profit on such investment and that several other persons of wealth had made similar investments with him and that defendant was anxious to expand his clientele to include persons not engaged in agricultural pursuits; that defendant represented that in the event of such investment by the plaintiff defendant would either purchase animals for him or segregate animals from the defendant's herd and that thereafter defendant would keep, feed and maintain the animals, breeding them and crediting plaintiff with the progeny and that by reason of defendant's experience he was highly skilled in the art of buying and selling cattle and that by reason of his skill plaintiff's investment would be without risk of loss; that defendant represented that profit and income on such an investment would ac-

crue to the investor when the herd allotted the investor reached thirty in number and that the cost of keeping, feeding, breeding and maintaining the animals allotted to an investor would not exceed $200 per year per head and that the initial expense of feeding and maintaining would be borne by defendant until the investment had attained a profitable status and that defendant would have no obligation with respect to the physical keeping of the animals; that defendant represented that he was anxious to expand his clientele to the community of Highland, Illinois, where plaintiff resided, and that if plaintiff would invest with him defendant would personally allot to him at a price of $1,000 per head cattle of an actual value of $2,000 per head and would allot him cattle described as heifers and young matrons not over two years of age with pedigrees fully warranting the sum total of plaintiff's investment; that defendant represented that it was his uniform practice to offer to return to investors or purchasers such money invested or paid in the event of dissatisfaction on their part but that defendant had never experienced dissatisfaction on their part and had never been required to refund any money but that if plaintiff were at any time dissatisfied with his investment, if made, defendant would refund his entire investment; that by reason of the statements and representations made to plaintiff by defendant plaintiff was induced to and did deliver and pay over to defendant the sum of $15,000 and defendant took, received and appropriated such sum; that notwithstanding the alleged confidential relationship existing between plaintiff and defendant, defendant failed to carry out and perform the representations and inducements made and did not exercise good faith in the use and employment of the money paid him by plaintiff in that initially the defendant failed and refused to allot any animals from his herds to the plaintiff and that upon the plaintiff's demand to be shown animals allotted to him the defendant segregated fifteen cows from his

herds but that one was in excess of eleven years of age, one was in excess of nine years of age, four were in excess of eight years of age and three were in excess of seven years of age and that none had a pedigree or other characteristic which would make the average value of the allotted animals $2,000 per head or would make the total value of the allotted animals $15,000 to equal the amount of money paid defendant by plaintiff; that the animals allotted to plaintiff were of a true and actual value not exceeding $300 per head; that upon learning the ages, characteristics and value of the animals allotted to him plaintiff demanded the return of his money, which demand the defendant refused and thereafter ordered plaintiff to remove from defendant's premises the animals allotted to plaintiff; that on the failure of plaintiff to remove the animals so allotted to him defendant billed plaintiff for feed, maintenance and breeding of the animals and upon plaintiff's failure to either remove the animals or pay the bills for feeding, maintenance and breeding defendant foreclosed his agister's lien resulting in the sale of the animals; that plaintiff had at no time acquiesced in the allotment of cattle made to him by defendant but had at all times repudiated it and demanded the return of his investment; that defendant did not intend to perform and comply with the representations made to plaintiff but, on the contrary, affirmatively intended not to perform and comply with such representations. Plaintiff then demanded judgment against defendant awarding him the return of the $15,000 paid to defendant by plaintiff and punitive damages in like amount.

In the second count of his complaint plaintiff seeks to recover for breach of contract, alleging that he purchased from defendant fifteen cows for the agreed price of $15,000. He realleges the charges of fraud in the inducement, the payment of the $15,000 and the alleged agreement to refund such money at any time in the event of plaintiff's dissatisfaction. It is then alleged that in reliance on these representations plaintiff paid to defendant the agreed purchase price but that defendant in disregard of his obligations under the said contract of sale delayed in allotting any animals from his herd to plaintiff and that when he did allot them none of the cows had a value of $2,000 as agreed nor did the total value of the animals purchased amount to $15,000 but that the actual value of the animals did not exceed $300 per head, which defendant well knew. Plaintiff therefore charged defendant with a breach of his contract from which he allegedly suffered $15,000 in damages, being the amount invested, and then realleged the charges of fraud as alleged in Count I of his complaint and asked for $15,000 additional punitive damages.

By way of answer defendant denied all allegations of fraud or misrepresentation on his part, denied that the relations of the parties were confidential, admitted that he sold plaintiff fifteen head of cows at the agreed price of $15,000 and admitted that plaintiff had paid him the purchase price therefor, but denied that there was any agreement to refund plaintiff the purchase price if he should become dissatisfied with his bargain. Defendant also admitted that he agreed that he would keep plaintiff's cattle at $200 per year per head and feed, breed and maintain them until plaintiff could move them. Defendant affirmatively alleged that after the sale had occurred and the cows had given birth to calves the cows and calves were registered by defendant for plaintiff in plaintiff's name with the American Aberdeen Angus Association. Defendant further alleged that after a drop had occurred in the price of cattle in September of 1952 plaintiff requested his money back which defendant refused to give him; that after defendant had furnished plaintiff with the registration certificates of the cattle he asked plaintiff whether or not he wished to sell the calves that had been born to these cows as he had a purchaser for them who would pay from $250 to $300 per calf, but that plaintiff would

not agree to that nor did he return the registration certificates on the calves so that they could be sold. Defendant further alleged that after plaintiff demanded return of the purchase price paid for said cattle defendant repeatedly billed plaintiff for breeding, keeping, maintaining and feeding the fifteen cows and their progeny, which demands being declined defendant finally sued plaintiff to foreclose defendant's agister's lien against the fifteen cows and their progeny and in such proceeding recovered judgment in partial satisfaction of which the cattle were sold.

The answer to the second count, in substance, alleged that there was a sale of fifteen cows for $1,000 apiece, realleged substantially all of the matters set forth in answer to Count I of plaintiff's complaint and denied the confidential relationship between plaintiff and defendant and the allegations of purported representations made by defendant to plaintiff to induce plaintiff to enter into the contract.

The two causes of action were not pleaded in the alternative but so far as appears from the pleadings plaintiff was seeking to recover money judgments aggregating $60,000. There was no motion to require plaintiff to elect on which cause of action he would proceed. The action was tried to the court without a jury. It appeared from the evidence that at all times pertinent to the issues plaintiff was a man in his thirties and manager of a pipe organ manufacturing enterprise in Highland, Illinois. The defendant, a somewhat older man, operated a stock farm devoted to the breeding, raising, selling and maintenance of Aberdeen-Angus cattle near New Florence, Missouri. The plaintiff and defendant became acquainted through a young lady, one Mary Lou O'Haran, who was one of plaintiff's employees and in the early part of 1952 the plaintiff, defendant and Miss O'Haran made a trip to Oklahoma to attend a sale of Angus cattle and at the sale purchased an Angus cow for $3,000, each of the three furnishing $1,000 of the purchase price.

During the course of the trip it developed that the plaintiff, for the purpose of investment, was interested in buying some Angus cattle. Several days after the trip to Oklahoma the plaintiff went over to defendant's farm and purchased fifteen Angus cows from defendant for $15,000, which plaintiff paid at that time. Mary Lou O'Haran was with the plaintiff at the defendant's farm when the purchase was made.

At that time the defendant pointed out to plaintiff the cattle that he was purchasing, indicating that they had on double neck chains. By agreement between the parties the cattle were left on the defendant's farm and the defendant was to board them for an indefinite period of time at a reasonable rental not to exceed $200 per year per cow for which he was to be paid by the plaintiff at least once every six months or a year. Plaintiff had little knowledge of cattle, Angus bred or otherwise.

Between February 9 and September 20, 1952, the plaintiff made several trips to defendant's farm to look at his cattle, usually in company with Miss O'Haran. The testimony also shows that shortly after the transaction in question defendant took a trip to Hawaii and that not long after his return the fifteen cows in question were registered with the American Aberdeen Angus Breeders Association in the name of plaintiff and that several calves that had been born to said cows were also registered in plaintiff's name. On September 20, 1952, defendant conducted one of his cattle sales which the plaintiff attended. After this sale at the defendant's farm the plaintiff also attended a cattle sale at or near Columbia, Missouri, and one near Kansas City, Missouri. Following these cattle sales the plaintiff concluded that the cattle he had purchased were not worth what he had paid for them, that the defendant had misrepresented the facts to him and he asked the defendant to return his $15,000, which the defendant refused.

Following some correspondence and conversation between the parties defend-

ant finally ordered plaintiff to remove his cattle from defendant's farm, which the plaintiff refused to do, and thereupon defendant made a demand against plaintiff for some $6,000 for feed and breeding purposes which plaintiff refused to pay. Thereafter, defendant filed suit for an agister's lien upon which he was given judgment for $6,231.50 by a magistrate in Montgomery County, Missouri. The fifteen cows and their fourteen calves were then sold by the sheriff for $6,650 at an execution sale and after the costs and fees, totaling $838.50, were paid the defendant received $5,811.50 on his judgment. There was no written contract between the parties. The facts will be further developed in the course of this opinion.

On the evidence produced the court found the issues in favor of defendant so far as the causes of action pleaded were concerned, but found upon the evidence admitted without dispute that plaintiff was entitled to recover $3,111.50. The court specifically found, in effect, that the parties at all times pertinent to the issues here involved were dealing at arm's length and that no fiduciary relationship existed between them and that plaintiff did not turn over to defendant the sum of $15,000 or any other sum for investment as contended by him, but that plaintiff purchased fifteen Angus cows for $15,000 and gave defendant a check for same; that Mary Lou O'Haran, an employee of plaintiff, was with plaintiff at defendant's farm the day of the sale and that Miss O'Haran resided on a farm near Highland, Illinois, and began buying Aberdeen-Angus cattle in 1950 and at the time of trial owned six females, a bull and several calves of the Aberdeen-Angus breed; that "the defendant did not guarantee to the plaintiff that he would have a 25% return on his investment and that the investment would be without risk"; that "The defendant did not represent to plaintiff that the initial costs of boarding the cattle would be carried on by the defendant until the investment had attained a profitable status

by reason of the production of progeny and the sale thereof"; and that "The defendant did not represent that the 15 cattle he would sell the plaintiff were worth $2,000 per head, but that he would sell them to plaintiff for $1,000 per head". The findings will be further developed in the course of this opinion.

On the findings the court concluded as a matter of law that plaintiff was not entitled to recover on the causes of action pleaded in his complaint but, as heretofore noted, entered judgment for plaintiff in the sum of $3,111.50. From the judgment so entered plaintiff has appealed and seeks reversal on substantially the following grounds: (1) the court erred in concluding as a matter of law that no fiduciary relationship existed between plaintiff and defendant, (2) the court erred in not concluding as a matter of law that the fiduciary relationship existing between plaintiff and defendant prohibited defendant from allotting to plaintiff cattle of a reasonable value less than the amount paid defendant by plaintiff, (3) the court erred in failing to find that the cattle allotted to plaintiff by defendant were of a reasonable value less than the amount paid defendant by plaintiff and that defendant knew they were of such value, and (4) the court erred in not finding that regardless of whether there was a fiduciary relationship between the parties there was a breach of contract by defendant in allotting cattle not reasonably worth the money paid him by plaintiff.

■ In the final analysis it is clear that plaintiff bottoms his right to recover on the alleged fact that there existed between the plaintiff and defendant a fiduciary relationship which required defendant to act with the utmost good faith toward the plaintiff and not to overreach him for defendant's benefit. The short answer to this contention would seem to be that the court found that no such relationship existed between plaintiff and defendant and that in the transaction here involved they acted at arm's length. This finding is, of course, presumptively correct and

should not be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. It is, however, urged by plaintiff that this finding is not sustained by the evidence. It is not our purpose to restate the evidence on this question in detail. Though it may be somewhat repetitious, we observe that the evidence shows that plaintiff was a successful business man, the head and owner of a manufacturing company and a man of substantial means and business experience who could afford to and did fly his own airplane around the country. His interest in the cattle business, as previously stated, was aroused not by the defendant but by his employee, Miss O'Haran, who had purchased from the defendant two pure-bred Angus cows at $1,000 a head in 1950 and who had attended numerous sales of pure-bred Angus cattle where these were shown. She had taken leave from her work to attend one of the cattle sales in Texas in 1951 and plaintiff discussed with her before and after her departure the buying of Angus cattle. Plaintiff went to the International Show in the Fall of 1951. Miss O'Haran was then keeping Angus cattle which she owned on her father's farm. This young woman's mother introduced defendant to plaintiff at this International Show in Chicago and plaintiff expressed his interest in cattle at that time to defendant. Early in 1952 it appeared that plaintiff, defendant and Miss O'Haran attended two sales in Oklahoma, each buying a third interest in an Angus cow costing $3,000, and cattle were discussed, resulting in an offer by defendant to sell plaintiff fifteen head of pure-bred Angus cattle at $1,000 a head. The transaction, however, was not closed at that time but plaintiff returned to defendant's farm on February 9, 1952, and again took with him Miss O'Haran in whom he had great confidence as to her knowledge of pure-bred Angus cattle. In other words, plaintiff was not relying solely upon what defendant might tell him about the cattle he was buying. By the time plaintiff purchased the cattle he had attended, according to the record in this case, three

showings and sales of pure-bred Angus cattle, including the International Show in Chicago. Miss O'Haran accompanied plaintiff when defendant pointed out to plaintiff the cattle he was intending to sell him. Plaintiff was looking for an investment of surplus funds. He had the advice and counsel of his trusted employee, Miss O'Haran, who had experience in the purchase and maintenance of Angus cattle. Defendant did not seek out the plaintiff and attempt to sell him Angus cattle. The cattle in question were accessible and visible to the plaintiff and his advisor and there was no effort to prevent plaintiff from thoroughly inspecting the quality of the cattle and ascertaining their market value.

To entitle plaintiff to recover not only must it be made to appear that he in fact relied upon the alleged misrepresentations of the seller, that he had a right to rely thereon, and that he was induced thereby to make the purchase, but it is generally held that where the buyer has an opportunity equal to that of the seller to investigate and ascertain the truth or falsity of the seller's representations with respect to the property, he has no right to rely upon the representations and cannot, in the absence of actual fraud on the part of the seller, avail himself of them. As said in Dickinson v. Bankers Life & Casualty Company, Mo.App., 283 S.W.2d 658, cited with approval in Woolfolk v. Jack Kennedy Chevrolet Company, Mo.App., 296 S.W.2d 511, 515:

"The law affords to every one a reasonable protection against fraud in dealing, but it is not an indulgent guardian which can go to the romantic length of giving protection against the consequence of indolence, folly or careless indifference to the ordinary and accessible means of information."

The court in the instant case therefore correctly held that no relationship of confidence or trust arose as a result of the dealings between plaintiff and defendant.

■■ The suggestion that defendant selected the animals the plaintiff was buying is not borne out by the record. The record discloses that defendant merely pointed out which of the cattle he in fact owned which were the subject of the sale. This was necessary because other cattle in the herd belonged to other parties and no one else present had sufficient knowledge to point out which of the cattle were the subject of sale. Where, as here, the parties dealt at arm's length defendant might properly commend the property he was selling without being guilty of fraud or misrepresentations. This is commonly accepted as trade talk, seller's statements or puffing, and a statement as to value is universally held to be a representation as to which the doctrine of caveat emptor applies. It must also be borne in mind that there was testimony that the cattle purchased by plaintiff were worth $1,000 per head and the court specifically found that the proof did not establish that the cattle were not worth that amount and on this issue the burden of proof was on the plaintiff.

■ Plaintiff in his complaint charged the defendant with various alleged misstatements of fact and various alleged fraudulent acts and testified to such statements and acts. As to these it is significant that the court on conflicting evidence specifically and categorically found in favor of defendant. This is illustrated by the following findings:

"14): * * * the defendant did not guarantee to the plaintiff that he would have a 25% return on his investment and that the investment would be without risk.

"15): The defendant did not represent to plaintiff that the initial costs of boarding the cattle would be carried on by the defendant until the investment had attained a profitable status by reason of the production of progeny and the sale thereof.

"16): The defendant did not represent that the 15 cattle he would sell the plaintiff were worth $2,000 per head, but that he would sell them to plaintiff for $1,000 per head."

We are convinced that in finding in favor of defendant and against the plaintiff on the two causes of action set out in plaintiff's complaint the court committed no prejudicial error and the judgment in that regard is therefore affirmed.

■ It remains to consider the contention of defendant that the judgment in favor of plaintiff for $3,111.50 is unwarranted and void. Defendant is the appellee and he took no appeal from any part of the judgment. He was the successful litigant so far as the two causes of action pleaded in plaintiff's complaint are concerned. Not having filed a cross-appeal he cannot be heard to question the legality of the judgment as entered, nor can he allege error in its entry. Peoria & P. U. Ry. Co. v. United States, 263 U.S. 528, 44 S.Ct. 194, 68 L.Ed. 427; Devine v. Zimmerman, 8 Cir., 133 F.2d 850; United States Fidelity & Guaranty Co. v. Sweeney, 8 Cir., 80 F.2d 235; Blackhurst v. Johnson, 8 Cir., 72 F.2d 644; Barnsdall Refining Corp. v. Cushman-Wilson Oil Co., 8 Cir., 97 F.2d 481. In Peoria & P. U. Ry. Co. v. United States, supra, the court said [263 U.S. 528, 44 S.Ct. 197]:

"The appellees can be heard before this court only in support of the decree which was rendered."

In Devine v. Zimmerman, supra, the appellees attempted to urge error in the dismissal of their complaint. In denying their right so to do we said, inter alia [133 F.2d 852]:

"In passing it should be observed that plaintiffs also complain of this action of the court in dismissing their complaint, but not having appealed they cannot be heard to complain of the judgment as entered."

The same rule was announced by this court in all the above cited cases. Thus, in United States Fidelity & Guaranty Co. v. Sweeney, supra, we said [80 F.2d 240]:

"Ordinarily, an appellee who files no cross-appeal is bound by the judgment as entered."

And in Blackhurst v. Johnson, supra, in referring to the right of an appellee who has not filed a cross-appeal to urge error we said [72 F.2d 649]:

"She has, however, not appealed, and questions decided adversely to a party who has not appealed will not be considered on appeal. Appellees can be heard only in support of the decree which was rendered."

We therefore pretermit any consideration of the grounds urged by defendant in support of his contention as the matter is not properly before us. The judgment as entered is presumptively correct and even if the part of the judgment now complained of by defendant were vulnerable to attack had he filed a cross-appeal on the ground that it was not warranted by the pleadings we might still, in support of the judgment, assume that the pleadings had been amended to conform with the proof admitted in evidence without objection. The judgment here complained of must therefore be sustained. It results that the judgment as entered is affirmed in its entirety.