UNITED STATES et al. v. DAVID BUTTRICK CO. et al.

No. 4315.

District Court, D. Massachusetts.

July 23, 1936.

Francis J. W. Ford, U. S. Atty., John Dickinson, Asst. Atty. Gen., and John S. L. Yost and A. H. Feller, Sp. Assts. to the Atty. Gen., for plaintiffs.

Jacob H. Tupman, of Lynn, Mass., for defendant Mary D. Pezold.

Andrew J. Aldridge and Brenton K. Fisk, both of Boston, Mass., for defendant New England Creamery Co.

Francis J. Kelley, of Boston, Mass., for defendants Wm. J. Martines, James Martines, and Frank P. Martines.

Charles S. Walkup, Jr., of Boston, Mass., for defendant Mason's Creamery Co.

Joel W. Eastman, of Boston, Mass., for defendant Glendale Milk Farm, Inc.

Greer, Sibley & Crane, of Boston, Mass., for defendants Chapin, and others.

Charles L. Walkup, Jr., of Boston, Mass., for defendants Thomas Seymour, W. P. Elliott Co., George Constantinides, F. W. Laroe, and John E. Burr.

Haines-Ce-Brook, Inc., and Samuel D. Elmore, of Boston, Mass., for defendant Haines-Ce-Brook, Inc.

Frederick M. Sears, Jr., of Boston, Mass., for defendants Robert B. and Fred W. Woodland.

BREWSTER, District Judge.

This bill in equity is brought under the Agricultural Adjustment Act, as amended by the Act of August 24, 1935 (7 U.S.C.A. § 601 et seq.), against 28 defendants who are distributors of milk in Boston and vicinity. Plaintiff seeks a mandatory injunction to compel these defendants to comply with an order of the Secretary of Agriculture, issued February 7, 1936, known as Order No. 4, regulating the handling of milk in the Greater Boston area.

The defendants have filed motions to dismiss on divers grounds. These motions were heard on the allegations of the bill at the same time that the motion for temporary injunction was heard on affidavits and counteraffidavits. I have examined all of these affidavits, and if I were confronted with the necessity of passing upon the wisdom of federal regulation of the milk in-dustry, they would be helpful. So far as they tend to show the necessity for or expediency of a mandatory injunction, they do not wholly satisfy me that, if the recalcitrant defendants are not brought into line, the consequences likely to follow would be as disastrous as predicted, either to producers or distributors. All, or nearly all, of the defendants have stated under oath that they were paying the "blended price" or better for their milk, and were not underselling in the Boston market. Two hundred seventy-five farmers in Vermont, New Hampshire, Maine, and Massachusetts have given affidavits in opposition to the injunction. It has appeared from these affidavits that of the defendants named, Edward Weiler et al., doing business as E. Weiler & Son, is no longer in business, and that the Valley Farm, Blue Ribbon Dairy, and Charles L. Woodland distribute only milk originating in Massachusetts, and are not handlers in interstate commerce.

Certain of the motions to dismiss raise the question whether the amended Agricultural Adjustment Act survived the decisions of the Supreme Court in United States v. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 316, 80 L.Ed. 477, 102 A.L.R. 914, and Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 375, 80 L.Ed. 513. Other motions to dismiss attack the constitutionality of the amended act on grounds that might so far involve factual situations that it would be proper to follow the practice suggested in Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 192, 79 L.Ed. 281, wherein Chief Justice Hughes observed that: "But where the legislative action is suitably challenged, and a rational basis for it is predicated upon the particular economic facts of a given trade or industry, which are outside the sphere of judicial notice, these facts are properly the subject of evidence and of findings. With the notable expansion of the scope of governmental regulation, and the consequent assertion of violation of constitutional rights, it is increasingly important that when it becomes necessary for the Court to deal with the facts relating to particular commercial or industrial conditions, they should be presented concretely with appropriate determinations upon evidence, so that conclusions shall not be reached without adequate factual support."

But a motion to dismiss for want of jurisdiction, based upon the proposition that

the amended act fell under the decisions in the Butler and Rice Cases, presents for consideration a question which will not be aided by any findings of fact. The motion will turn wholly upon the decisions dealing with the original and the amended Agricultural Adjustment Act, and upon the provisions contained in those acts. If a motion to dismiss is sustained on that ground, there will be no need to even summarize the allegations of the bill or the affidavits. The only question to be determined will be whether there are provisions of the amended Agricultural Adjustment Act in force which, in view of the recent decisions, authorize the order.

The original and the amendatory acts both provide that: "If any provision of this title [chapter] is declared unconstitutional, or the applicability thereof to any person, circumstance, or commodity is held invalid the validity of the remainder of this title [chapter] and the applicability thereof to other persons, circumstances, or commodities shall not be affected thereby." Section 14 (7 U.S.C.A. § 614).

Similar provisions in statutes were before the Supreme Court in Dorchy v. Kansas, 264 U.S. 286, 290, 44 S.Ct. 323, 68 L. Ed. 686; Williams v. Standard Oil Co., 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596; Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468; Carter v. Carter Coal Co., 56 S.Ct. 855, 874, 80 L.Ed. ——.

From these cases it is established that such a provision is not an "inexorable command" but is an aid in reaching the legislative intent.

In the Carter Case the court said: "The statutory aid to construction in no way alters the rule that in order to hold one part of a statute unconstitutional and uphold another part as separable, they must not be mutually dependent upon one another."

It is argued on behalf of the plaintiff that it is possible to salvage separate provisions of the amendatory act which will leave a statute resting upon the powers of Congress to regulate commerce between states, empowering the Secretary of Agriculture to issue and this court to enforce his order regulating the sale and distribution of milk, including the price to be paid to producers.

In considering this contention it will be profitable first to refer to the opinion in United States v. Butler, supra. It is to be noted that the court was there dealing with

a statute (48 Stat. 31) which, like the statute now under consideration, was entitled, An Act "to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, * * * and for other purposes." Furthermore, both acts contained a declaration of emergency and a declaration of legislative policy substantially similar.

In his opinion, Mr. Justice Roberts sets out these declarations and material portions of section 8 of the act (48 Stat. 34), which included those provisions empowering the Secretary of Agriculture, "in order to effectuate the declared policy," to enter into marketing agreements and to license "processors, associations of producers, and others to engage in the handling, in the current of interstate or foreign commerce, of any agricultural commodity or product thereof, or any competing commodity or product thereof."

It thus appears clear that the court had before it in the Butler Case not only the taxing provisions, but those provisions which purported to confer authority upon the Secretary of Agriculture to regulate the agricultural industry.

Respecting the separability of the provisions of the act, the court, in the Butler Case, points out that the government asked it to separate the act into two statutes; "the one levying an excise on processors of certain commodities; the other appropriating the public moneys independently of the first."

To this suggestion the court replied in the following language:

"Passing the novel suggestion that two statutes enacted as parts of a single scheme should be tested as if they were distinct and unrelated, we think the legislation now before us is not susceptible of such separation and treatment. * * *

"Beyond cavil the sole object of the legislation is to restore the purchasing power of agricultural products to a parity with that prevailing in an earlier day."

Again the court says (297 U.S. 1, at page 61, 56 S.Ct. 312, 317, 80 L.Ed. 477, 102 A.L.R. 914): "We conclude that the act is one regulating agricultural production; that the tax is a mere incident of such regulation."

It is quite apparent from a study of the majority opinion in the Butler Case

that the decision reached rested upon the long-established principle that the attainment of a prohibited end may not be accomplished under the pretext of 'the exertion of powers which are granted; citing McCulloch v. State of Maryland, 4 Wheat. 316, 423, 4 L.Ed. 579; Linder v. United States, 268 U.S. 5, 17, 45 S.Ct. 446, 69 L. Ed. 819, 39 A.L.R. 229.

It was said that these controlling principles were "as applicable to the power to lay taxes as to any other federal power." To paraphrase, it could be said that these principles were as applicable to the power to regulate interstate commerce as any other federal power.

The prohibited end was obviously the attempted regulation of agricultural production.

It can hardly be denied that the avowed end and aim of the amendatory act in nowise differs from that of the original.

■ It is equally true that the constitutional power of the central government to levy taxes must be regarded fully as far reaching as the commerce powers, and we have seen that these powers cannot be resorted to for the purpose of regulating matters of purely local concern. Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas. 1918E, 724.

■ The taxes, crop control, the price fixing by license or agreement were all parts of a "statutory plan," the end and purpose of which was to regulate and control agricultural production, or a matter beyond the power delegated to the federal government. They are "but means to an unconstitutional end." United States v. Butler, supra.

The Supreme Court has stated in unmistakable language that the changes wrought by the amendment in 1935, did "not cure the infirmities of the original act which were the basis of the decision in United States v. Butler. * * * The exaction still lacks the quality of a true tax. It remains a means for effectuating the regulation of agricultural production, a matter not within the powers of Congress." Rickert Rice Mills v. Fontenot, supra.

■ The declaration of legislative policy is incapable of separation into two parts; one pointing to a constitutional end and the other to an unconstitutional end. Section 8 of the amendatory act (7 U.S.C.A. § 608) purports to endow the Secretary of Agri-

culture with certain "general powers." These powers extend to the regulation of production of many agricultural commodities. It is argued that the amended act does not authorize any direct control over the production of milk, but it does not follow that an order fixing base quantities for the purposes of fixing price will not, as a practical matter, operate to regulate, to some extent at least, the production of milk. However that may be, the act confers upon the Secretary of Agriculture power to regulate and control the production of other agricultural commodities, which we have seen is something the federal government cannot do under the Constitution as it now stands.

The general powers conferred upon the secretary are exercised by means of orders which may relate to the handling in interstate commerce of milk (section 8c (5), as added by Act Aug. 24, 1935, § 5, 7 U.S.C.A § 608c (5) or to the production and marketing in interstate commerce of other agricultural commodities (section 8c (6), as added, 7 U.S.C.A. § 608c (6).

I do not think the plaintiff would go so far as to argue that section 8 could be separated into legal and illegal delegation of authority. Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550; Employers' Liability Cases, 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297; Carter v. Carter Coal Co., supra.

If it be conceded that the federal government may regulate the sale of and prices for milk as a commodity affected with a public interest (Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469), it does not follow that such powers would extend to all agricultural commodities. Compare New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747; United States v. Seven Oaks Dairy Co. (D.C.) 10 F.Supp. 995, and cases cited at page 1001.

In Butler v. United States, 78 F.(2d) 1, at page 6, the Circuit Court of Appeals for this circuit said: "The power of congress to regulate interstate commerce does not authorize it to do so by taxing products either of agriculture or industry before they enter interstate commerce, or otherwise to control their production merely because their production may indirectly affect interstate commerce."

I do not decide whether Congress has the power to enact legislation authorizing the Secretary of Agriculture to impose regulations upon the sale of milk in interstate

commerce. I only decide that, as yet, Congress has not enacted such legislation. What it has done is to pass a law intended to control and regulate the agricultural industry, to the end that the agricultural purchasing power may be increased. The Supreme Court has definitely adjudged such a purpose to be beyond the granted powers of the federal government. The provisions for orders by the Secretary of Agriculture were merely a means to effectuate the declared purpose of the act. The purpose failing, the means failed with it.

It was argued in the Butler Case that the processing tax was the "heart of the law." With this argument the court agreed by holding it to be an indispensible part in the plan of regulation. These taxes were levied to meet the expense of administering the act, which would include the expense incurred in exercising the powers conferred upon the Secretary of Agriculture in section 8. It would generally be supposed that when the "heart of the law" is removed, little of vitality would survive.

It may be noted further that the act provides penalties for violation of any order, and that section 8a (6), as added by Act May 9, 1934, § 4, as amended by Act Aug. 24, 1935, § 9 (7 U.S.C.A. § 608a (6) confers upon this court jurisdiction "specifically to enforce * * * the provisions of this section [section 8a], or of any order * * * heretofore or hereafter * * * issued pursuant to this Title."

The suit at bar is brought under this section. The language of it is comprehensive enough to embrace those administrative acts which the Supreme Court has already declared to be beyond the reach of federal legislation. This section must fall with the other provisions of the act, leaving the court without jurisdiction in the instant case.

Finally, I conclude that it is not possible to wrest from the outlawed statute separable provisions which can stand as a legislative enactment authorizing the orders involved in this suit. It can here be said, as was said in Williams v. Standard Oil Company, supra, 278 U.S. 235, at page 245, 49 S.Ct. 115, 118, 73 L.Ed. 287, 60 A. L.R. 596: "Accordingly, we must hold that the object of the statute under review was to accomplish the single general purpose which we have stated, and, that purpose failing for want of constitutional power to effect it, the remaining portions of the act, serving merely to facilitate or contribute to

the consummation of the purpose, must likewise fall."

It hardly seems necessary to add that this decision does not touch the provisions of the 1935 Act (section 21 (d), 7 U.S.C.A. § 623 (d) relative to the recovery of taxes already paid. It is not necessary to now decide whether these provisions formed any part of the "statutory plan" condemned by the court in the Butler and Rice Cases.

It follows that, inasmuch as the court is without jurisdiction to entertain the bill in equity, the court is without power to grant the mandatory injunctions prayed for and the motion for such injunction is denied; and the motions to dismiss for want of jurisdiction are allowed.