## UNITED STATES et al. v. WHITING MILK CO.

### No. 4520.

District Court, D. Massachusetts.

Nov. 19, 1937.

As Amended Nov. 24, 30, 1937.

Robert H. Jackson, Asst. Atty. Gen., Wendell Berge, Joseph Blandi, and Hugh B. Cox, Sp. Assts. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., and John A. Canavan, Asst. U. S. Atty., both of Boston, Mass., for plaintiffs.

John M. Raymond and Lawrence Foster (of Palmer, Dodge, Barstow, Wilkins & Davis), all of Boston, Mass., for defendant.

SWEENEY, District Judge.

This case is before me on the plaintiffs' application for a preliminary injunction. It is one of thirty cases which were argued simultaneously. The facts differ in many of the cases, and are being treated separately.

### Findings of Fact.

The defendant has a principal place of business in Massachusetts, and is engaged in handling milk, either in the current of interstate commerce, or in such a manner that it directly burdens, obstructs, or affects interstate commerce in that commodity.

A continuous flow of fresh milk into the Boston area, which includes thirty-seven cities and towns, from rural New England is imperative. From the urban viewpoint, it is a matter of real necessity. From the producers' viewpoint, it provides a dependable market for their product, and is an important source of income to them. Less than 12 per centum of the milk brought into the Boston area originates in Massachusetts, and less than 2 per centum of it is handled exclusively in intrastate commerce.

From 1929 to 1933, the prices paid for milk to the producers of New England declined steadily. In 1936, the price paid to producers of Vermont was 34 per centum below the 1929 level. Conditions in other states were comparable.

Effective regulation has in the past proven to be a boon to milk producers. Heretofore, when federal regulation has failed, a resumption of chaotic marketing conditions and a lowering of price levels have occurred. Experience teaches that a resumption of such conditions will occur if this defendant and others similarly

situated are permitted to avoid complying with the law as it exists.

The defendant contends that irreparable damage will be suffered by compulsory payments to the Marketing Administrator if it later develops that the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 671 et seq., Order No. 4, or action taken thereunder, is unconstitutional, in that there is no method provided for recovery of payments which the law exacts. This argument has no appeal to this court primarily because the money that the handler is called upon to pay to the Administrator is essentially money which has accrued to the defendant as the result of the act itself.

As a matter of fact, certain of the handlers (i. e., those who are able to dispose of the bulk of their goods at fluid, or class I prices) will acquire and enjoy a distinct advantage over their less fortunate competitors if payments to the Marketing Administrator can be avoided or delayed. The money which this defendant is called upon to pay to the Administrator must be distributed by him to other handlers in order that they may comply with the section of the act which calls for payment of a blended price to the producers. Obviously, if payments are not made to the Marketing Administrator, there can be no payments made by him to the handlers who dispose of the bulk of their property at nonfluid or class II prices. It is not in the public interest to foster such a condition.

On November 30, 1935, the Secretary of Agriculture, acting under section 8b and 8c (3) of the Agricultural Adjustment Act, as amended (7 U.S.C.A. §§ 608b, 608c (3), notified handlers of a proposed marketing agreement and order thereunder to regulate the handling of milk in the Boston area.

Public hearings were held at St. Johnsbury, Vt., on December 10 and 11, 1935, and at Boston, Mass., on December 12, 1935, in accordance with the terms of that notice. Handlers of less than 50 per centum by volume of the milk marketed in the area approved and signed the agreement.

On February 7, 1936, in conformity with section 9, as amended (7 U.S.C.A. § 609), the Secretary of Agriculture, with the approval of the President of the United States, determined: (a) That the refusal, by the handlers to sign such an agreement tended to prevent the effectuation of the policy of the act; (b) that the

issuance of an order was the only practical means of advancing the interests of producers; and (c) that at least two-thirds of the producers, engaged in the business, approved such an order; and issued Order No. 4 regulating the handling of milk in the Boston area. All findings and determinations necessary thereto having been made, the order became effective on February 9, 1936.

On August 1, 1936, a suspension of Order No. 4 was declared by the Secretary of Agriculture. On June 25, 1937, this suspension was terminated, termination so far as it related to Articles I, II, III, V, VI (section 1), XII, XIII, XIV, XV, XVI, being effective on July 1, 1937, and, so far as it related to the remaining provisions of the Order, being effective on August 1, 1937.

On July 27, 1937, in accordance with the provisions of section 8c (3) and 8c (17) of the act, as amended (7 U.S.C.A. § 608c(3, 17), the Secretary, with the approval of the President, amended Order No. 4 to be effective August 1, 1937.

Notwithstanding that the law is in effect now, this defendant has failed to comply with the act and order thereunder, in that it has failed to make payments to the Marketing Administrator under paragraph 3 of section 1 of article VIII of Order No. 4, as amended, in the following sums for the periods stated:

August 1 to 15, 1937.......... $ 8,087.34
August 16 to 31, 1937.......... 7,350.41
September 1 to 15, 1937........ 16,120.34
September 16 to 30, 1937....... 18,133.67

There is also owed by this defendant under section 1 of article X of Order No. 4, as amended, the following sums for the periods stated:

August 1 to 15, 1937............. $708.00
August 16 to 31, 1937............ 739.77
September 1 to 15, 1937.......... 689.09
September 16 to 30, 1937......... 669.68

There is also owed by this defendant under section 1 of article IX of Order No. 4, as amended, the following sums for the periods stated:

August 1 to 15, 1937............. $708.00
August 16 to 31, 1937............ 739.77
September 1 to 15, 1937.......... 689.09
September 16 to 30, 1937......... 669.68

None of the foregoing sums have been paid by the defendant to the Marketing Administrator.

This act was designed to meet a public necessity. The status of the public interest should be preserved until the Supreme Court has passed upon the many questions raised by these defendants. Such a preservation cannot be had by allowing those who should contribute, to retain moneys from the Administrator, which, under the act, belong to other handlers or their producers.

### Conclusions.

■ That Congress has not provided a mode of redress in the event that the act is declared unconstitutional is not new or fatal to the act. It is not the duty of this court to pass upon the type or wisdom of legislation enacted by the Congress. There is a strong presumption that all legislative enactments are constitutional. Ogden v. Saunders, 12 Wheat.(25 U.S.) 213, 270, 6 L.Ed. 606; Union Pac. R. R. v. U. S., 99 U.S. 700, 718, 25 L.Ed. 496; Legal Tender Cases (Knox v. Lee), 12 Wall. (79 U.S.) 457, 20 L.Ed. 287; In re Jones (D.C.) 10 F.Supp. 165, 166. There is also a well-recognized principle of law that inferior courts should hesitate to declare acts unconstitutional until it appears clearly that Congress has exceeded its authority.

■ From the study that I have made of the act and to the order thereunder in connection with the thirty cases before me, I am of the opinion that stripped of its presumptions of constitutionality and unattended by limitations of propriety, the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 671 et seq. and Order No. 4 thereunder, are valid exercises of the constitutional powers of Congress to regulate interstate commerce.

■ The authority of a state to establish any regulation of, or create a burden upon, traffic in interstate commerce has been expressly denied in Baldwin v. Seelig, 294 U.S. 511, 55 S.Ct. 497, 500, 79 L.Ed. 1032, 101 A.L.R. 55, wherein Mr. Justice Cardozo, citing the International Textbook Co. v. Pigg Case, 217 U.S. 91, 112, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.(N.S.) 493, 18 Ann.Cas. 1103, stated: "It is the established doctrine of this court that a state may not, in any form or under any guise, directly burden the prosecution of interstate business." This would likewise apply to any regulation of interstate commerce.

■ If this authority is denied to the states, I think it can be fairly said that it must exist in the Congress. The Supreme Court has repeatedly stated that the power to regulate interstate commerce among the several states is supreme and plenary. See Simpson v. Shepard (Minnesota Rate Case), 230 U.S. 352, 398, 33 S.Ct. 729, 739, 57 L.Ed. 1511, 48 L.R.A.(N.S.) 1151, Ann. Cas.1916A, 18, wherein it was stated that it is "complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution. Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L.Ed. 23."

In National Labor Relations Board v. Jones & Laughlin Corporation, 301 U.S. 1, 36, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893, 108 A.L.R. 1352, the court stated: "The fundamental principle is that the power to regulate commerce is the power to enact 'all appropriate legislation' for 'its protection and advancement' (The Daniel Ball, 10 Wall. 557, 564, 19 L.Ed. 999); to adopt measures 'to promote its growth and insure its safety' (Mobile County v. Kimball, 102 U.S. 691, 696, 697, 26 L.Ed. 238); 'to foster, protect, control, and restrain.' Mondou v. New York, N. H. & H. R. Co. (Second Employers' Liability Cases), 223 U.S. 1, 47, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.(N.S.) 44. See Texas & N. O. R. Co. v. Railway Clerks, supra [281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034]. That power is plenary and may be exerted to protect interstate commerce 'no matter what the source of the dangers which threaten it.'"

This act seeks to regulate commerce among the several states, and chooses as its mode of regulation the fixing of minimum prices to be paid for the product in interstate commerce. In Carter v. Carter Coal Company, 298 U.S. 238, at page 326, 56 S.Ct. 855, 879, 80 L.Ed. 1160, the majority of justices found it unnecessary to pass directly on the question whether Congress has the right to fix a minimum price to be paid for a commodity moving in interstate commerce, but, in the minority opinion, Mr. Justice Cardozo, with the approval of three other justices, stated, that prices in interstate transactions "must therefore be subject to the power of the Nation unless they are to be withdrawn altogether from governmental supervision." No case has been called to my attention in which the Supreme Court of the United States has expressed a contrary view.

See, also, United States v. Buttrick Co. (C.C.A.) 91 F.(2d) 66, 68, wherein Mr. Justice Bingham stated: "It is apparent from a reading of these provisions that

324

neither section 8b nor section. 8c (1). and its subdivisions have any direct relation to the control or regulation of agricultural production, but solely to the marketing of milk and certain fruits bought and sold in interstate commerce—a matter within the exclusive control of Congress and not of the states."

If the power exists in the Congress to establish minimum prices for commodities moving in interstate commerce, I can find no exercise of that power either in the act, Order No. 4, or the actions thereunder which would result in the deprivation of property without due process of law. See Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 509, 78 L.Ed. 940, 89 A.L.R. 1469.

I am therefore of the opinion that the plaintiffs are entitled to the preliminary injunctions asked for in the first two prayers of their bill of complaint, pending a hearing on the merits.

The defendant's requests for rulings of law are denied, except in so far as they. are consistent with the above. The plaintiffs' requests for rulings of law are denied, except in so far as they are consistent with the above.

A separate order is today being made with reference to the completion of pleadings and for an early trial on the merits.