UNITED STATES (NOYES, Commissioner of Agriculture and Markets of State of New York, Intervener) v. ADLER'S CREAMERY, Inc.

No. 168.

Circuit Court of Appeals, Second Circuit.

Nov. 13, 1939.

988

CLARK, Circuit Judge, dissenting.

Samuel Rubin, of New York City, for defendant-appellant.

John S. L. Yost and Robert M. Cooper, Sp. Assts. to Atty. Gen., and Margaret H. Brass, Sp. Atty., of Washington, D. C., for the United States.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This suit was brought by the United States pursuant to the provisions of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. Sec. 601 et seq., to enforce an order, known as Order No. 27, which was issued by the Secretary of Agriculture by virtue of authority conferred upon him by the above mentioned statute. The appellee Noyes, as Commissioner of Agriculture and Markets of the State of New York, was duly permitted to intervene as a party plaintiff. The order first became effective on September 1, 1938; it was later suspended as of January 31, 1939; and still later on July 1, 1939, it was reinstated and since has been in effect.

The order undertook to regulate the handling of milk in the New York Metropolitan Marketing Area in so far as to cover such milk which is in the current of interstate commerce or which directly burdens, obstructs or affects such commerce and was applicable to all who were handlers of such milk as defined therein. The validity of the order was upheld in United States v. Rock Royal Co-operative, Inc., 59 S.Ct. 993, 83 L.Ed. 1446, and is no longer disputed.

The appellant during the period covered by the complaint operated two receiving plants in the State of New York where it received milk which was produced wholly within the State of New York and was transported within that state to the City of New York where it was sold to a distributor who prepared it for market and sold it either for use or resale, all within the City of New York. This milk was not physically commingled with any other milk before sale for consumption. The appellant complied with the provisions of Order No. 27 for the months of September and October, 1938. Competitors, however, questioned the validity of the order; refused to comply; and in November, 1938, in a suit brought in the District Court for the Northern District of New York, United States v. Rock Royal Co-op., 26 F.Supp. 534, the court declined to grant a preliminary injunction to compel compliance. Final

decision in the district court was a dismissal of the bill and that resulted in holding further attempts to enforce the order in abeyance until that decision was reversed by the Supreme Court in United States v. Rock Royal Co-operative, Inc., supra. Meanwhile the operation of Order No. 27 was suspended and later reinstated as noted above. The appellant did not make the payments as provided by the order for the period beginning with the month of November, 1938, and continuing to January 31, 1939, the effective date of the suspension. Since the order was re-instated, effective on July 1, 1939, the appellant has complied with it in so far as it covered the period since the effective date of its reinstatement.

■ The first question is whether or not the appellant is a handler subject to the provisions of Order No. 27. If so, we do not understand that there is any dispute as to the amounts for which it is liable for the three months it has failed and refused to comply with the order. Handler, as defined generally in the order, "means any person who engages in the handling of milk, or cream therefrom, which is received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area, which handling is in the current of interstate commerce or directly burdens, obstructs, or affects interstate commerce." The appellant's primary contention that it was not such a handler during the period of its non-compliance is based on the fact that it was engaged solely in handling intrastate milk together with its claim that its handling of such milk did not directly burden, obstruct or affect interstate commerce. It also points out that Order No. 27 was expressly made effective only " * * * after the issuance by the Commissioner of Agriculture and Markets of the State of New York of an order containing provisions similar to the provisions of this order and to which the order shall be complementary * * *" and insists that if it is subject to any order, it is only to the state order which was duly issued and made effective as of September 1, 1938. Its other grounds for reversal are that the present enforcement of the order for the period from November 1, 1938, to January 1, 1939, violates the due process clause of the Fifth Amendment, U.S.C.A.Const., and that in any event a preliminary mandatory injunction in effect decided the whole cause before it had an adequate opportunity to be heard on the merits and was improper.

■ There was sufficient support for findings of fact which the court made to the effect that about one-third of the milk produced for sale in the New York Metropolitan Marketing Area comes from states other than New York and about one-sixth of the milk produced in the State of New York for sale in that marketing area crosses state lines on its way to that market. About one-half of all the milk produced for sale in that marketing area is actually moved in interstate commerce while being brought to market; such milk as that which the appellant handled, and now handles, is sold in that market in active competition with milk brought there in interstate commerce and the latter cannot compete with unregulated milk in the marketing area. These facts are, therefore, to be taken as established on this appeal. Guilford Const. Co. et al. v. Biggs, 4 Cir., 102 F.2d 46.

■ Accepting them, accordingly, we believe the appellant is a handler as defined in Order No. 27 in that its business involves dealing in milk in a way which directly burdens, obstructs and affects interstate commerce within the scope of the decision of the Supreme Court in United States v. Rock Royal Co-operative, Inc., supra. It is true that the milk with which the court was immediately concerned in that case had been moved in interstate commerce. But the power of Congress to protect interstate commerce from being burdened or obstructed is not confined to the regulation of actual movement across state lines. It extends to whatever action becomes necessary to free, or keep free, from obstruction the lawful passage of commodities from state to state. National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. And the recognition that this may involve the incidental regulation of intrastate commerce is by no means new. Wisconsin R. R. Commission v. Chicago, B. & Q. R. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1086; Houston, E. & W. Texas R. Co. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341.

■ We interpret the decision in United States v. Rock Royal Co-operative, Inc., supra, to mean that milk which has not crossed a state line but which is distributed in a marketing area in such a way that its marketing is merely part of what is from

the public standpoint one marketing operation which includes interstate milk may be the subject of federal regulation whenever that is necessary to prevent a direct burden upon or obstruction to the coming of interstate milk into the marketing area. While due regard is to be given to maintain purely intrastate affairs free from federal encroachment, Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, and Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, the regulation of interstate commerce through marketing control is lawful and, being so, the incidental power to protect interstate commerce so regulated from direct burdens or obstructions extends to what has become, or is reasonably sure to become, such a burden or obstruction because of the fact that interstate commodities can move in commerce only subject to marketing control. What is, or is likely to be, such a burden or obstruction must be determined from the nature of the need for protection and where that need has been created by lawful marketing control of interstate commodities the scope of such protection covers the field, when necessary, of the similar marketing control of intrastate commodities. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092. Accordingly, the facts justifiably found below are sufficient to require us to hold that the appellant is a handler of milk who is bound to comply with the provisions of Order No. 27.

Nor is the order invalid under the due process clause of the Fifth Amendment, U.S.C.A.Const., because it may be economically burdensome upon the appellant in respect to payments to be made for past months during which the market in which it sold was upset by the then prevailing conditions. The order was then in effect to the extent that it had been duly made and, though it may have been a hard choice under the circumstances, the appellant was free to conduct its business in compliance with the order; to cease doing business if it was unwilling to comply; or to keep on without compliance and run the risk of the consequences. It chose the latter course and must bear whatever loss that choice entails. Hegeman Farms Corp. v. Baldwin, 293 U.S. 163, 55 S.Ct. 7, 79 L.Ed. 259. True enough, the appellant is obliged to pay what its failure to pay on time has made a past obligation but there is nothing retroactive about the order which makes the enforcement of payment a taking, without due process, of the property of the appellant. Mulford v. Smith, supra.

Yet a majority of the court does not think a preliminary mandatory injunction should have been issued. Congress has, indeed, provided for the enforcement of such orders and for enjoining their violation. 7 U.S.C.A. § 608a(6). The usual equitable basis for the proceeding need not be alleged or proved. American Fruit Growers v. United States, 9 Cir., 105 F.2d 722. But while equitable remedies have been provided they are still to be exercised in accordance with established equitable procedure.

The purpose of an injunction pendente lite is to guard against a change in conditions which will hamper or prevent the granting of such relief as may be found proper after the trial of the issues. Its ordinary function is to preserve the status quo and it is to be issued only upon a showing that there would otherwise be danger of irreparable injury. Community Natural Gas Co. v. City of Cisco, 5 Cir., 65 F.2d 320. While it may be granted to restore the status quo ante, it ought not to be used to give final relief before trial. Sims v. Stuart, D.C., 291 F. 707; Securities & Exchange Commission v. Torr, 2 Cir., 87 F.2d 446.

In this instance the preliminary mandatory injunction required payment by the appellant in advance of trial and permitted a distribution of the payments so made merely upon affidavits and before final decree. It did so notwithstanding that the only violation of the order at the time the injunction was granted, actual or reasonably to be contemplated, was a failure to make past payments which were due from a handler not shown to be in danger of becoming unable to pay before a final decree could be entered. There was no reason to believe, therefore, that delay in payment until after a final decree could be obtained would injuriously affect the present or future marketing control made effective by the order or cause any irreparable injury. This case differs from H. P. Hood & Sons, Inc., et al. v. United States et al., 1 Cir., 97 F.2d 677 which dealt largely with future payments, though some past due payments seem to have been involved also, in that here the handler acquiesced in the validity of the order and was not contesting its li-

ability for current or future payments in accordance with its terms. Consequently, the plaintiffs had no rights which were endangered by any delay that would be made necessary by a joinder of issue and a disposition of the matter by final decree. That being so, the preliminary mandatory injunction was improvidently granted.

Apparently no appreciable delay would have been necessary after the defendant filed its answer as it is probable that a motion for a summary judgment could then have been successfully made. We but advance that thought, without expressing any opinion, merely to point out that, if so, a quick and effective remedy was available which made the granting of an injunction of doubtful propriety even if a sufficient basis for it had otherwise been shown.

Order reversed.

CLARK, Circuit Judge, dissents.

CLARK, Circuit Judge (dissenting).

As the opinion herewith makes clear, the ultimate outcome of this litigation cannot be in doubt, in view of the decision in United States v. Rock Royal Cooperative, Inc., 59 S.Ct. 993, 83 L.Ed. 1446. The moving papers herein, in showing the need of a preliminary injunction, stress the fact that "experience had demonstrated that marketing orders can work effectively only if promptly and vigorously enforced" and point to the demoralization of marketing control not merely in the Boston milk area after United States v. David Buttrick Co., D.C., 15 F.Supp. 655 (reversed in 1 Cir., 91 F.2d 66), but also in the New York area by the failure of summary enforcement against this defendant and other defendants prior to the decision of the Supreme Court in the Rock Royal case. Plaintiff claims that unless it can secure prompt enforcement of milk orders against the remaining recalcitrant handlers, like disorderly marketing conditions will be repeated with eventual general non-compliance.[1]

The almost insurmountable difficulties of milk regulation are so well known that they need not be recited. Indeed, the news-papers call our attention to them daily. From Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, on, the problems appear recurrently in the decisions. State and federal legislatures have attempted to cope with them. Here the United States and the State of New York have united their efforts and have adopted identical regulations, in an endeavor to bring order to possibly the most chaotic distributing situation we have in this country. Congress has stated clearly its desire for speedy and summary enforcement of these orders. 7 U.S.C.A. § 608a (6), cited in the opinion. I do not know how successful the program will ultimately prove to be, but I am loath to put even temporary obstacles in its way, now that the responsibility of the administrators has been made clear by the Supreme Court's affirmance of the legislative mandate. I think the need of a preliminary injunction has been shown.

It seems to me inconsistent to hold that the defendant's position is now legally unsupportable and yet grant it a temporary respite to contest the governmental orders for a time, with the inevitable result of abetting the demoralization of control. Here on the hearing below the defendant's real and only hope is to induce the Supreme Court to limit the Rock Royal decision. We may aid it to seek a speedy test of that hope, as we have done by giving it the benefit of a stay pending appeal, but that is all that is necessary. It has taken nearly four months for this action to get to its present point; it will certainly be back to us in a few months with the issues no more clearly framed than now. I think we shall not have aided the parties to a settlement of litigation by now reversing.

While a preliminary mandatory injunction is, of course, normally unnecessary, yet it is well within the equity powers of the court when the situation does call for it. Toledo, A. A. & N. M. R. Co. v. Pennsylvania Co., C.C., 54 F. 730, 19 L.R.A. 387, cited in Peoria & P. U. R. Co. v. United States, 263 U.S. 528, 535, 44 S.Ct. 194, 68 L.Ed. 427. In H. P. Hood & Sons, Inc., et al. v. United States et al., 1 Cir., 97 F.2d

---

[1] "Unless the defendant and other handlers who are in default are immediately enjoined from continued violation of the Order, the inevitable result will be a resumption of disorderly marketing conditions followed by general non-compliance, the lowering of prices to producers and the disruption and burdening of commerce between the states." Affidavit herein of O. M. Reed, Acting Chief of the Dairy Section, Division of Marketing and Marketing Agreements, United States Department of Agriculture.

677, such an injunction was granted covering back as well as future payments. In that case the ruling below, United States v. Whiting Milk Co., D.C., 21 F.Supp. 321, was modified to provide for payments into court, rather than to the market administrator. That was done in view of the then contemplated appeal to the Supreme Court. Now that constitutionality has been determined and also since the Milk Administrator retains sufficient funds in his equalization pool to make repayment, should that ever be required, a like modification here is less necessary.

The course of decision herein discloses, I believe, a defect in the new summary judgment rule, Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Under the rules of many jurisdictions a summary judgment may be entered for either plaintiff or defendant, on the appropriate showing, as soon as the action is brought to the court or the defendant appears. English Rules under the Judicature Act, O. 3, r. 6, O. 14, 14A, 15; Conn.Pr.Bk.1934, § 53, p. 34; Ill.Rev.Stat. 1939, c. 110, § 181; Mass.Gen.Laws1932, c. 231, § 59B; R.I.Gen.Laws 1938, c. 524, § 1; but not N. Y. Rule of Civil Practice 113; 1 N.J.Rev.Stat.1937, 2:27–124 to 129, N.J.S.A. 2:27–124 to 2:27–129, and Supreme Court Rule 80, N.J.S.A. tit. 2; and Mich.Stat.Ann.1935, § 27.989. The first published draft of the Federal Rules so provided. Preliminary Draft, May, 1936, Rule 43(a). But the novelty of the procedure to many lawyers led to suggestions limiting its scope, so that as adopted, though a defendant may move for such a judgment at any time, a plaintiff or claimant may move only after an answering pleading is filed. Subdivisions (a) and (b) of Rule 56. Under the circumstances no reason of substance barred a final judg-

ment below, and it is unfortunate that mere limitations of procedure may have done so. Amendment of Rule 56(a) eliminating this restriction on the valuable remedy of the summary judgment appears to the writer hereof to be highly desirable in the interest of preventing the protraction of litigation.[2]

It is not clear, however, why the plaintiff did not suggest avoidance of this difficulty, and the court did not take steps to that end. For the time for answer apparently had expired at the time the order below was made, and the court could have proceeded at once on the basis of a default unless the defendant speedily filed a formal answer saying in general language what its affidavits said specifically.

I would affirm.

---

[2] The power of the Supreme Court to amend the new rules seems conceded by all, but some disagreement has arisen as to whether the Court may proceed by simple promulgation of the amendment, as in section 1 of the enabling statute, or must follow the cumbersome and delaying course of section 2 of that statute (transmittal to the Attorney General and report by him to Congress *at the beginning of a regular session*, with the change remaining non-effective *until after the close of such session*). Act of June 19, 1934, c. 651, §§ 1, 2, 48 Stat. 1064, 28 U.S.C.A. §§ 723b, 723c. It is believed that the history of the legislation supports the construction indicated by the language of the statute itself that the procedure required by section 2 applies to the one act there provided for, namely, the *uniting* of the law and equity rules, and that any other changes are to be made pursuant to the simpler methods of section 1 and of other grants of rule-making authority to the Court. 45 Harv.L.Rev. 1303, 1309-10; 86 Pittsb.Leg.J. 8, 27; 15 Tenn.L. Rev. 584, 585; 3 Moore's Federal Practice 3448-3452; but see A. B. A. Proceedings at Institutes, Vol. I, p. 179; Vol. II, p. 227; 24 A.B.A.J. 675; H.R. Rep. No. 2743, 75th Cong., 3d Sess.(1938) 3; Hearings before Committee on the Judiciary on H.R. 8892, 75th Cong., 3d Sess.(1938) 71.