COLUMBIA BROADCASTING SYSTEM, INC., Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, et al., and Broadcast Music, Inc., et al., Defendants.

No. 69 Civ. 5740.

United States District Court, S. D. New York.

Oct. 27, 1970.

---

Cravath, Swaine & Moore, New York City, for plaintiff; Alan J. Hruska, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, for defendant Broadcast Music, Inc.; Jerome G. Shapiro, Amalya L. Kearse, New York City, of counsel.

Sullivan & Cromwell, and Herman, Finkelstein, New York City, for defendant American Society of Composers, Authors and Publishers; Arthur H. Dean, Roy H. Steyer, New York City, of counsel.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendants Coleman, Hamilton, Schwartz and Washington; Simon H. Rifkind, Jay H. Topkis, New York City, of counsel.

## OPINION

LASKER, District Judge.

Broadcast Music, Inc. ("BMI") and its affiliates move for a preliminary injunction requiring Columbia Broadcasting System, Inc. ("CBS") to pay to BMI pendente lite the fair and reasonable value of the BMI repertoire being used by CBS Television Network, or in the alternative to restrain CBS from infringing the copyrights on BMI's music.

CBS has sued BMI, American Society of Composers, Authors and Publishers ("ASCAP"), and their respective officers, directors and affiliates, claiming violations of Sections 1 and 2 of the Sherman Act. In particular, CBS alleges that ASCAP's and BMI's refusal to grant it a license to broadcast music on a per-use basis rather than on a blanket or per-program basis [1] violates the statute. CBS argues that under a per-use license it would be required to pay royalties only on the music it actually uses, whereas under the blanket or per-program license it has been compelled to make payments which have no relationship to actual use. It contends that the requirement by the defendants that CBS accept either a blanket or per-program license is a misuse of their copyrights under the holding of Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

The answer of BMI and certain of its affiliates denies the allegations of the complaint, contends that the complaint fails to state a claim upon which relief can be granted, and asserts counterclaims for copyright infringement by CBS, which, since January 1, 1970, has been broadcasting BMI music without a license from (or payment to) BMI or its affiliates.

## FACTS

In 1950 BMI and CBS Television Network ("CBSTN")[2] entered into an agreement by which CBS was licensed to broadcast BMI music.[3] From 1954 through the year 1969 the agreement required CBSTN to pay BMI as a royalty 1.09 percent of its net receipts from ad-

---

1. Both ASCAP and BMI operate under consent decrees growing out of prior antitrust actions: United States v. American Society of Composers, Authors and Publishers, et al., Civil Action No. 13–95 (entered March 14, 1950), and United States v. Broadcast Music, Inc. and RKO General, Inc., No. 64 Civ. 3787 (entered December 29, 1966). The ASCAP decree requires ASCAP under certain terms to grant licenses to applicants. Under the BMI decree certain limitations are placed upon BMI's right to require conditions to licensing, but nothing in the decree prevents it from granting a per-use license.

2. The parties to the licensing agreements have been BMI and CBS Television Network. Except where necessary, however, I use the designation "CBS" to refer either to Columbia Broadcasting System, Inc. or CBS Television Network, as the case may be.

3. BMI is not actually the owner of the music. The music is written by its affiliates, who in turn have authorized BMI to license its use on their behalf. In this opinion I refer to the music, for purposes of simplicity, as BMI music.

vertisers after deductions. During the year 1969, CBS expressed to BMI and ASCAP its dissatisfaction with the then existing arrangements and its preference, indeed its insistence, that it renew its agreements with the licensing organizations only on a per-use basis. A desultory exchange of correspondence and conversations between CBS and the respective licensing organizations brought only an impasse. BMI and ASCAP refused to license other than on a blanket or per-program basis; CBS held fast to its requirement that the license be on a per-use basis. The existing licenses expired on December 31, 1969, and no new agreements have been entered into. In spite of the failure to secure a license,[4] CBS has continued and continues to broadcast BMI music substantially as it did in the past.

In clear anticipation of the conflict which inevitably would ensue, CBS filed its complaint in this action December 31st, alleging, as stated above, that the respective refusals by ASCAP and BMI violated the Sherman Act. BMI's answer and counterclaims were filed April 7, 1970.

The instant motion was made on June 3, 1970, and a hearing thereon was held July 10, at which counsel for CBS, BMI, ASCAP and certain of ASCAP's affiliates were heard.[5] Since the date of the hearing the parties concerned have met with the court on several occasions and have negotiated conscientiously between themselves in an effort to dispose of the matter on a non-adjudicated basis. These efforts have failed, and a ruling is now necessary.

### POWER OF THE COURT TO GRANT THE RELIEF REQUESTED

At the threshold it must be determined whether the court has the power to grant the unusual relief requested: a mandatory injunction requiring the plaintiff affirmatively to make payments to BMI pendente lite.[6] I have concluded that the court does have such power, and that it should be exercised.

"The function of the equitable remedy of injunction is preventive, prohibitory, protective, or restorative, as the law and circumstances of the case warrant." 7 Moore's Federal Practice, 2d Ed., ¶ 65.04[1], p. 1625.

4. From the time this action was commenced through the time this motion was argued, CBS continued to request and receive licenses from ASCAP under the ASCAP consent decree, covering successive periods of 60 days each and extending to the end of August 1970. On August 11, 1970, a consent order was entered under which ASCAP agreed to issue CBS an interim license for the period commencing January 1, 1970 and continuing until terminated by either party upon 30 days' notice.

5. Although ASCAP is, of course, not involved in the present motion as a movant or respondent, its counsel and counsel for certain of its affiliates argued at the hearing in opposition both to the BMI contention that CBS should pay BMI a specific percentage of the amounts which CBS pays ASCAP (discussed later in the text of this opinion) and to CBS's position that any payments which the court might require CBS to make to BMI should be computed on a per-use basis.

6. Although the motion requests the court (1) to order CBS to make payment to BMI pendente lite or (2) to enjoin CBS from infringing BMI's copyrights, that is, to restrain CBS from using BMI music, it is clear from the record (and from the expressions of counsel at conferences) that BMI would prefer the first alternative and that CBS would prefer—indeed, has expressed its willingness—to make reasonable payment to BMI rather than to forego the use of BMI music. Furthermore, the public has an interest in continuing to hear BMI music and in the continuance of BMI as the only large licensing competitor of ASCAP. Accordingly, I have concluded that the motion should not be disposed of in such a manner as to prevent CBS from using BMI music if any alternative exists. I have indicated in the body of the opinion that I believe a practical alternative does exist.

As Judge Frank stated in his classic description of the office of a preliminary injunction:

"It serves as an equitable policing measure to prevent the parties from harming one another during the litigation; to keep the parties while the suit goes on, as far as possible, in the respective positions they occupied when the suit began." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir. 1953).

Where necessary to preserve the status quo, the court may, of course, issue a mandatory injunction, since, as stated in Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966), it being the "general jurpose of a preliminary injunction * * * to preserve the status quo * * * [i]t follows that the court must have discretion to fashion such a preliminary injunction as may best approximate past positions in the light of the basic rights of the parties." [7]

Although courts are rarely called upon to issue mandatory injunctions calling for the payment of moneys pendente lite, they have done so when the equities and the circumstances of the case demonstrated the appropriateness of the remedy. United States v. Whiting Milk Co., 21 F.Supp. 321 (D.Mass.1937), aff'd sub nom. H. P. Hood & Sons, Inc. v. United States, 97 F.2d 677 (1st Cir. 1938), aff'd 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478 (1939).

Here, the circumstances and equities of the case do render appropriate the granting of an injunction ordering monetary payments pendente lite. Although BMI licenses the use of its music by many others than CBS, the income received by BMI from television usage of its music and, in particular, from CBS, is an important portion of its revenue.[8] Furthermore, the arrangements made between CBS and BMI constitute something of a bellwether for the terms of agreements between BMI and other broadcasters. Indeed, BMI contends that as an indirect result of CBS's non-payments to date in 1970, BMI has been unable to consummate license agreements with other television networks. BMI and ASCAP are each other's sole competitors of any consequence. ASCAP is a considerably older organization than BMI, deriving substantially more revenues from the television industry than BMI; and ASCAP is presently being paid for the broadcasting of its music by CBS and the other networks while BMI is not. It is impossible to measure with any degree of accuracy the extent to which this complex of factors puts ASCAP at a present advantage over BMI, but that it gives it some advantage, and perhaps a substantial one, is not to be doubted. It appears altogether inequitable to permit CBS to continue to use BMI music without making a fair payment pendente lite (especially considering the protracted nature of the instant litigation), while the networks continue to make large payments to BMI's stronger competitor. It is true that CBS makes the important claim that BMI has misused its copyrights, but that contention is necessarily far from demonstrated at this early stage of the case and is presently insufficient to warrant the court's refusal to grant relief. To CBS's credit it must be stated that it has responsibly and clearly indicated its willingness to make reasonable payments to BMI pendente lite without prejudice to its position that it is not required to make any.

The public, too, has an interest in the matter at hand. It is in the public interest, certainly, at this stage of the litigation, that BMI's viability as competitor of ASCAP not be weakened, and it is in the public interest to have the choice of listening to BMI music on CBS's many outlets.

These views are altogether independent of the question whether BMI will prob-

7. In Unicon, the Court of Appeals affirmed the issuance by the District Court of a mandatory injunction.

8. In 1969 CBS paid BMI $1,607,000 of BMI's total revenue of approximately $30,000,000.

ably succeed on the merits of this case. Where the "balance of hardships tips decidedly toward [the party requesting temporary relief] it will ordinarily be enough that [the movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Hamilton Watch Co. v. Benrus Watch Co., *supra*, 206 F.2d at 740. Unicon Management Corp. v. Koppers Co., *supra;* Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. July 6, 1970). Here the balance of hardships definitely tips in BMI's favor. CBS is a substantially larger and stronger organization than BMI. BMI would suffer substantially greater injury if it received no CBS payments than CBS would be injured by making them. Indeed, in normal circumstances CBS would, of course, expect and be required to make reasonable payments to BMI and would consider them an ordinary cost of doing business.

## THE RELIEF TO BE GRANTED

### A. *Monetary Relief*

■ 1) *The BMI Proposal:* BMI proposes that the payments to be made to it by CBS should be in a sum between 61.99 and 70 percent of the amount which CBS pays to ASCAP. It would serve no useful purpose to set forth at length the argument made by BMI in support of its rationale that payments to it by CBS should be computed as a percentage of payments by CBS to ASCAP, nor do I express any view as to the merits of that position. Suffice it to say that, voluminous as the documentary evidence presented may be, it is insufficient to justify the adoption of the rationale before trial. For example, it is impossible to determine from affidavits the degree of comparability between BMI and ASCAP music or the market or other monetary value of such music. Even if this seemingly insurmountable obstacle did not exist, the record is replete with factual disputes between the parties as to the extent of the use of BMI music by CBS in comparison to ASCAP music used by CBS, and the proper classification and valuation of various categories (feature, theme, background) of the ASCAP and BMI music, respectively, broadcast by CBS. Accordingly, the BMI proposal as to the method of computing a reasonable fee to be paid to it by CBS must be rejected without prejudice at this time.

■ 2) *The CBS Proposal:* CBS proposes that a reasonable fee to be paid by it to BMI should be determined on a per-use or actual usage basis. To set the fee on this basis would be, of course, to grant CBS substantially the relief which its complaint demands, at least from the present time until the final disposition of the litigation. To grant such relief at a preliminary stage of the litigation would be an improper exercise of the court's equitable powers. As stated in United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939):

> "The purpose of an injunction pendente lite is to guard against a change in conditions which will hamper or prevent the granting of such relief as may be found proper after the trial of the issues. Its ordinary function is to preserve the status quo and it is to be issued only upon a showing that there would otherwise be danger of irreparable injury. * * * While it may be granted to restore the status quo ante, it ought not to be used to give final relief before trial."

Accordingly, the proposal of CBS as to the method of computation of a reasonable fee to be paid BMI must also be rejected at this time without prejudice.

■ The proper remedy is to be measured by the office of a preliminary injunction itself; that is, to restore the parties to the status quo ante. There appears to be no more viable standard for the determination of a reasonable fee pendente lite than the fee in effect and actually paid by CBS to BMI at the commencement of the litigation. That fee (for the year 1969), the largest ever paid

by CBS to BMI,[9] was in the amount of $1,607,000. Accordingly, barring any adjustments pursuant to the discussion below on that subject, I hold that the reasonable fee which CBS shall pay to BMI, effective January 1, 1970, and during the pendency of the litigation, shall be at the rate of $1,607,000 per annum.

### B. *Condition of Relief*

■ There remains for determination the question as to whether payments to be made by CBS to BMI shall be conditioned on the granting by BMI to CBS of a license pendente lite to broadcast its repertoire. BMI argues that, although it is entitled to interim relief, it should not be required, as a condition of that relief, to grant CBS a license for the use of its music. Such a requirement, it says, would force it inequitably to relinquish its present counterclaims for copyright infringement (which at the statutory rate applied to the present volume of music being used amount to approximately $10,000,000) and its claims on account of future infringements.

The short answer to BMI's contention is that the award of monetary relief pendente lite here can only be justified as being in lieu of claims for infringement. Furthermore, measured, as the entire award of relief must be, by the rationale for granting any preliminary injunction, that is, to preserve the status quo, payments by CBS to BMI must be conditioned on the granting of a license to CBS, since, had CBS continued under prior circumstances to make payments to BMI, it would, of course, have received a license in exchange therefor. Indeed, it is difficult to understand what consideration CBS could be expected to have

received if it were required to pay a reasonable fee pendente lite and remain exposed in full to claims for infringement until the final determination of the case.

Finally, it is important to note that BMI retains its option to accept the relief granted by this opinion on the conditions set forth or to withdraw its motion prior to the entry of a decree, require no fee from CBS pendente lite, and retain its full rights under the copyright statute. That is to say, this opinion is not to be construed as ordering BMI to grant a license to CBS, unless, of course, BMI should decide to accept the reasonable fee set by the court.

### C. *Adjustments*

■ The determination that $1,607,000 is a fair and reasonable fee which CBS should pay annually to BMI is based on the record as it stands. That record supports the conclusion that the 1970 circumstances relating to CBS' use of BMI music are substantially the same as they were in 1969. However, since BMI's or CBS' contentions as to what a reasonable fee ought to be have focused attention only on (1) a comparison between CBS' use of ASCAP music and BMI music and (2) what revenue a per-use license might produce for BMI, the parties have had no occasion to present the court with detailed evidence as to whether there have in fact been any substantial changes in CBS' use of BMI music in 1970 which might warrant an adjustment (upward or downward) from $1,607,000. Accordingly, either BMI or CBS may within 10 days from the date of this opinion request a joint conference with the court for the purpose of making an offer of proof to the court of changed circumstances which, *within the ration-*

**9.** At the present time the court has been supplied with payment figures covering only the last six years, 1964–1969. Presumably, however, the 1969 figure represents the highest level ever attained in the course of CBS–BMI relations.

It is also to be noted that the agreed fee being paid by CBS to ASCAP effective January 1, 1970, for the year 1970, is in an amount substantially lower than that paid by CBS to ASCAP in 1969. Although I have indicated that the record as it stands does not warrant measuring the CBS–BMI fee by the size of a CBS–ASCAP fee, I mention the CBS–ASCAP reduction in partial reply to BMI's assertion that it should receive higher compensation in 1970 than in 1969 because CBS is allegedly using a higher percentage of BMI to ASCAP music in 1970 than it did in 1969.

*ale of this opinion,* would, in the view of that party, warrant an adjustment in the fee of $1,607,000. Upon such offer of proof the court will determine whether further consideration of the question of adjustment appears warranted and, if so, whether the proof offered should be submitted in affidavit form or at an evidentiary hearing. Except as specified above, no further adjustments shall be made except that on June 1 (or such other date as BMI and CBS may agree and the court may approve) of any year during the pendency of this litigation either BMI or CBS may similarly request an adjustment based on changed circumstances, in which event the procedure to be followed shall be that set forth above.

The relief granted herein is solely interim relief, and nothing in this opinion shall be construed to prevent possible retroactive adjustment of the fee paid pendente lite if the proof at trial establishes that the interim fee varies from the actual market value of the music used. In such event, it would presumably be in order retroactively to adjust the fee to the market value established by the evidence at trial.

\* \* \*

The motion for a preliminary injunction is granted to the extent and under the conditions set forth above.

Settle order and judgment on notice.