COLUMBIA BROADCASTING SYSTEM, INC., Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS and PUBLISHERS, Stanley Adams, as President of American Society of Composers, Authors and Publishers, Harold Arlen, Samuel Barber, Carl Fischer, Inc., Chappell and Co., Inc., Cy Coleman, Edwin H. Morris and Co., Inc., Elkan-Vogel, Inc., Essex Music, Inc., Famous Music Corp., G. Schirmer, Inc., Morton Gould, Arthur Hamilton, Henry N. Mancini, MCA, Inc., Peter Mennin, Milene Music, Inc., Robbins Music Corporation, Richard Rodgers, Arthur Schwartz, Shapiro, Bernstein & Co., Inc., Warner Brothers-7 Arts Inc., Ned Washington, on behalf of themselves and all other members of American Society of Composers, Authors and Publishers, Broadcast Music Inc., Al Gallico Music Corp., Paul Anka, Associated Music Publishers, Inc., Jerry Bock, Duchess Music Corp., Fred Ebb, Edward B. Marks Music Corp., Norman Gimbel, Sheldon Harnic, Hill and Range Songs, Inc., Hollis Music, Inc., John Kander, Charles Koppelman, Maclen Music, Inc., Peer International Corporation, Don Rubin, Screen Gems-Columbia Music, Inc., Joseph Stein, Sunbeam Music, Inc., Unart Music Corp., on behalf of themselves and all others who have granted Broadcast Music Inc. the right to license to third parties nondramatic performing rights of their copyrighted music, Defendants.

No. 69 Civ. 5740 (MEL).

United States District Court, S. D. New York.

Jan. 18, 1980.

Cravath, Swaine & Moore, New York City, for plaintiff; Alan J. Hruska, Roger H. Cummings, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, for defendants Broadcast Music Inc., et al.; Robert J. Sisk, Norman C. Kleinberg, Michael E. Salzman, New York City, of counsel.

LASKER, District Judge.

Broadcast Music Inc. ("BMI") moves for a preliminary injunction ordering Columbia Broadcasing System Inc. ("CBS") to increase the payments made, pendente lite, by CBS to BMI for the use of BMI music on the CBS television network.

I.

On December 31, 1969, CBS commenced this suit against the American Society of Composers, Authors and Publishers ("AS-CAP") and BMI alleging violations of §§ 1 and 2 of the Sherman Act and misuse of copyright.

Upon filing the action, CBS discontinued payments to BMI, although it continued to use BMI music on its television shows. In June, 1970, BMI moved for an injunction ordering CBS to pay BMI the fair and reasonable value of its repertoire being used by CBS. An injunction was issued December 30, 1970, requiring CBS to pay BMI an annual fee equal to that paid by it in 1969 ($1,607,000.), the fee being subject to adjustment on application of the parties to the court during the course of this litigation. Final determination of the fees payable for the period commencing December 31, 1969 was to be made by the court upon the conclusion of the litigation.

On September 22, 1972, BMI and CBS, by stipulation, agreed to a revised interim fee of $1,700,000., which was, by its terms, not subject to adjustment upward or downward prior to the entry of final judgment. The stipulation expressly modified the injunctive order of December 30, 1970. It further provided for an adjustment retroactive to January 1, 1970 and an agreement by CBS to withdraw a pending application of the court to reduce the fees it was then paying.

In October, 1975 after a twenty-nine day trial on the issue of liability, CBS' claims of anti-trust violation and copyright misuse were dismissed. 400 F.Supp. 737 (S.D.N.Y. 1975). Thereafter, BMI moved pursuant to Rule 54(b) of the Federal Rules of Civil Procedure for entry of final judgment as to CBS' claims against it and for retroactive adjustment of the interim fee. The motion was denied on the grounds that the outcome of the appeal then pending in the Court of Appeals might affect determination of the amount due and that a final judgment was therefore inappropriate at the time. The present application is not for final judgment, but for adjustment of interim relief.

On August 8, 1977, the Court of Appeals, finding the offering of blanket licenses to CBS to constitute per se unlawful price fixing and copyright misuse, reversed and remanded. 562 F.2d 130 (2d Cir. 1977). On April 17, 1979, the United States Supreme Court reversed that determination and remanded for further proceedings relating to CBS' claims that BMI's licensing practices violate the rule of reason. 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979). Thereafter defendants moved the Court of Appeals for summary affirmance of this court's judgment of dismissal, contending that CBS had failed to preserve on appeal any issue not disposed of by the Supreme Court's opinion. BMI argued to the Court of Appeals that continuance of the litigation was causing it serious injury because the payments it received from CBS were frozen until the litigation terminated. On July 6, 1979, that Court, in connection with the denial of defendants' motion for summary affirmance commented that

> "if a party should desire to seek relief with respect to the interim arrangement for license fees payable by CBS, application may be made to Judge Lasker. . . ."

Acting on this observation by the Court of Appeals and alleging that it is being unfairly injured because of the unexpected duration of this litigation and the unforeseeable rate of inflation which has occurred since the case was commenced, BMI has brought the present motion.

CBS opposes on three grounds: First, that a court adjustment of fees in favor of BMI would permit BMI to "welsh" on the "deal" embodied in the stipulation of September 22, 1972. Second, that since the Court of Appeals, before whom the appeal on remand from the Supreme Court is now pending, will allegedly decide that appeal promptly, it is inappropriate and unnecessary for this court to use its authority to grant relief; and that, since the Court of Appeals' decision may definitively dispose of the litigation, a final retroactive adjustment can be made when the Court of Appeals acts. Third, that BMI exaggerates

the injurious effect of the pay freeze; that BMI's business has grown "robustly" in the last ten years and that, in any event, if BMI is entitled to increased payment it will receive that amount upon the termination of the litigation.

## II.

The 1970 injunction was granted for the purpose of preserving the status quo ante between the parties; and the terms of relief precisely continued the pattern which had existed between them, making provision, however, for adjustments in the light of changed circumstances (*CBS v. ASCAP*, 320 F.Supp. 389 at 394). Determination of the motion, accordingly, depends on whether 1) circumstances have changed sufficiently to justify adjustment and if so, whether 2) the stipulated agreement of September 1972 between BMI and CBS should bar such relief. I conclude that circumstances have changed sufficiently to warrant an increase in the fee payable to BMI at this time and that the 1972 stipulation ought not bar granting such relief.

### A. Change of Circumstances

At the time of the 1972 stipulation this litigation was less than three years old. It is now more than ten years since the suit was instituted. Such a long passage of time would be expected to produce a change of conditions and has done so.

First: Since 1972 the case has been tried, appealed through the Court of Appeals to the Supreme Court and remanded to the Court of Appeals. This court dismissed all of the plaintiff's claims; the Court of Appeals while reversing as to some issues adopted this court's findings of fact; the Supreme Court reversed the Court of Appeals conclusion as to price fixing and remanded to consider whether a violation of the rule of reason exists. Thus, the case is not in the fluid state of September, 1972. Findings of fact have been made, and stand, against the plaintiff, and major legal claims made by it have been decided against it.

Second: Since 1972 the rate of inflation has accelerated at an historically unparalleled level with the result that the real value of CBS' payments to BMI has decreased by more than 40% (Affidavit of Edward M. Cramer, President of BMI, in support of the motion, citing Consumer Price Index for all Urban Consumers prepared by the Bureau of Labor Statistics, United States Department of Labor).

Third: Payments made to BMI by competing networks, NBC and ABC, have increased appreciably since 1972; each is approximately $1,000,000., per annum, higher than the payments made by CBS, (Cramer Affidavit ¶ 16 n.*) a fact which attests, at least prima facie, to the proposition that because of the decline of the value of the dollar, the fair value of music used warrants a higher dollar payment. This conclusion is further supported by the fact that, subject to the provisions of the 1976 Copyright Act, the United States Copyright Royalty Tribunal has recently raised fees payable by non-commerical broadcasters for the broadcast of music. The raise reflects the rate of inflation as specified by the Consumer Price Index. (Cramer Affidavit, p. 5; see, also, 37 C.F.R. ¶ 304.10)

Fourth: Unanticipated complications have appeared in the appellate process. Earlier expectations of rapid disposition of the case upon original appeal have proven illusory. The case has not only journeyed to the United States Supreme Court but the decision of that court itself has not proved final. It cannot presently be predicted when the pending remand to the Court of Appeals will be decided or what its outcome will be. In either event, further applications to the Supreme Court can be anticipated.

### B. The Equities

Since, whether governed by the 1970 injunction or the 1972 stipulation, it has been a feature of the fee payment arrangement that a retroactive adjustment, if needed, would be made upon the termination of this litigation, and since BMI does not ask to eliminate retroactive adjustment, the fundamental question at this time is who should bear the burden of the uncertainty which must exist until final judgment. BMI members have borne the burden of a freeze since 1970, and of the existing freeze since 1972. In light of the circumstances described above, it is equitable that it now be assumed by the plaintiff which has been the loser, at least so far, in this court and in the United States Supreme Court. CBS' arguments in opposition, while responsible, do not carry the day.

1. In view of the history outlined above, BMI's motion for relief cannot fairly be described as an attempt to "welsh" on the 1972 deal. The foundation upon which that agreement was based has shifted substantially. While it may have been foreseen in 1972, as CBS claims, that this litigation would be long lived and that the country faced significant inflation, neither the fact that the case would still have several laps to go even on its tenth anniversary, nor the unparalleled rate of inflation which has actually occurred, was reasonably foreseeable. The cases cited by CBS for the proposition that whether these conditions were foreseeable or not, a stipulation or contract is not revocable at will are unilluminating at best. Of course, BMI cannot revoke the 1972 stipulation without the sanction of the court, nor does it purport to be able to do so. There is no doubt, however, that the court has the equitable power to grant the relief requested and, indeed, CBS does not argue to the contrary.

2. There is no reason to believe, and every reason not to believe that the Court of Appeals will promptly decide the newest pending appeal. The issues are so complex that the parties were granted the unusual period of a full day for oral argument. Briefs of amici curiae and, by invitation, of the Solicitor General add nuances that must be considered. A member of the panel has died and his successor must catch up on the long history recited above. And after the Court of Appeals' work is done, the matter may yet return to the United States Supreme Court or be remanded here.

3. That BMI may have grown "robustly" since 1970—a proposition on which we make no finding—does not negate the fact that the freeze on payments has nevertheless injured it pro tanto. Moreover, to the extent that the question of growth of the parties is relevant, CBS' volume appears to have expanded with as much robustness as BMI's during the period of suit. (Cramer Affidavit p. 8)

### C. Amount and Condition of Relief

Unless extended hearings were to be held, which neither party suggests nor apparently desires, it is impossible to determine with accuracy the market value of the BMI music currently being utilized by CBS. BMI, therefore, requests that the CBS fee payable to it be increased to the sum which it claims is equivalent today to the $1,700,-000. fee set by the 1972 stipulation: that is, $2,949,100. We note, however, that current amounts being paid annually by NBC and ABC to BMI are $2,656,000. and $2,600,000., respectively. (Cramer Affidavit, at 7, n. 7) On the basis of our knowledge of the industry acquired through this and related litigation, we assume that the value of the BMI music which CBS is currently using is at least equivalent to that of its competitor networks. There is nothing in the record before us, however, to establish the level of its actual use more accurately, and we are reluctant to set a new fee based exclusively on the cost of living index, since there is no showing as to the degree to which that index is appropriately applied to BMI's business.

Accordingly, the application is granted to the extent of increasing the amount payable by CBS to BMI annually, commencing January 1, 1980, to the sum of $2,600,000.

Since the relief granted means that BMI will face a considerably larger negative retroactive readjustment if the litigation is ultimately decided against it, it is reasonable that BMI should demonstrate its ability to repay CBS the additional $900,000. per year. Accordingly, before the decree is signed BMI shall submit appropriate documentary evidence of its ability to make such repayment should the occasion arise. CBS shall, if it desires, submit answering material within two weeks thereafter.

The motion is granted to the extent and on the conditions specified above.

It is so ordered.